# Pennsylvania Mutual Life Ins. Co. *v.* Philadelphia, Appellant.

*Constitutional law—Municipalities—Eminent domain — Land adjacent to parks—Public use—Act of June 8, 1907, P. L. 466—Equity—Injunction—Decree.*

1. The constitutional provision permitting the appropriation of private property for public use, contemplates an actual use by the public, or the vesting of the right to such use in the public; the fact that the public may derive benefit, utility or advantage from the taking of land will not constitute public use within the meaning of the Constitution, where it is not intended that the public shall use and enjoy the land appropriated.

2. The question whether it be expedient or wise that private property shall be taken for public use is solely for the legislature, the question whether the use for which the property sought to be appropriated is a public use while primarily for the legislature, is ultimately for the determination of the courts.

3. The Act of June 8, 1907, P. L. 466, authorizing cities to acquire land for parks, parkways and playgrounds, and to appropriate neighboring private property within two hundred feet of the boundary line of such property so taken, and to resell such neighboring property under such restrictions in the deeds as will fully protect such parks, parkways, etc., and declaring such appropriation to be a taking for public use, is unconstitutional in so far as it authorizes cities to take and appropriate private property within two hundred feet of the boundary line of property appropriated for such parks, etc., as the use to which such property so taken is intended by the act to be put is not a public use.

4. Where the councils of the City of Philadelphia, in pursuance of the authority intended to be conferred by the Act of June 8, 1907, P. L. 466, by ordinance appropriated certain land within two

hundred feet of a proposed parkway, for public purposes, and by a further ordinance authorized the mayor to enter into an agreement with a telephone company for the sale of such land to such company upon certain restrictions calculated to protect such parkway, to enhance its beauty and to secure the construction of an ornamental building adjacent thereto, and the owner of the land so condemned brought a bill in equity to enjoin the city officials from taking and condemning such land and from selling it to such telephone company, and prayed that the Act of June 8, 1907, P. L. 466, be declared unconstitutional, and the court awarded the injunction on the ground that one of the ordinances was defective in certain particulars, the court was justified in awarding the injunction, but should have declared the act unconstitutional as prayed for in the bill, and a decree for plaintiff as amended was affirmed.

Argued April 15, 1913.   Appeals, Nos. 169 and 173, Jan. T., 1913, by plaintiff and defendant, from decree of C. P. No. 2, Philadelphia Co., Dec. T., 1912, No. 1097, In Equity, awarding an injunction in case of the Pennsylvania Mutual Life Insurance Company v. City of Philadelphia; Rudolph Blankenburg, Mayor, and Morris L. Cooke, Director of the Department of Public Works. Before FELL, C. J., BROWN, MESTREZAT, ELKIN and MOSCHZISKER, JJ.   Affirmed.

Bill in equity for an injunction to restrain the City of Philadelphia from appropriating certain land under the provisions of the Act of June 8, 1907, P. L. 466.

From the record it appeared that by ordinance of July 3, 1912, the councils of the City of Philadelphia undertook to appropriate certain land within two hundred feet of a proposed parkway.

By ordinance of January 16, 1913, the mayor was authorized to enter into an agreement on behalf of the city, with the Bell Telephone Company, whereby the land so appropriated should be conveyed to the telephone company in fee, subject to certain building restrictions.   The purpose of the transaction was admittedly to protect the parkway from the construction

of an unsightly building in the vicinity.  There were no allegations of fraud.

The court held the act constitutional, but awarded the injunction on the ground that the ordinance of January 16, 1907, was defective in that it was not preceded by an ordinance prescribing general restrictions for the protection of the parkway.  Plaintiff and defendant appealed.

*Error assigned,* among others, was the decree of the court.

*Joseph P. McCullen,* Assistant City Solicitor, with him *Michael J. Ryan,* City Solicitor, for the City of Philadelphia.

*Joseph Gilfillan,* of *Graham & Gilfillan,* with him *J. Washington Logue* and *John C. Grady,* for the Pennsylvania Mutual Life Insurance Company.

*John G. Johnson,* for the Bell Telephone Company.

OPINION BY MR. JUSTICE MESTREZAT, June 27, 1913:

By Section 1 of the Act of June 8, 1907, P. L. 466, cities of the Commonwealth are authorized to purchase, acquire, use and appropriate private property for the purpose of making, enlarging, extending and maintaining public parks, parkways and playgrounds whenever councils shall determine thereon.  Section 2 confers like authority on cities for appropriating "neighboring private property, within two hundred feet of the boundary lines of such property so......appropriated for...... parkways......in order to protect the same by the resale of such neighboring property with restrictions, whenever the councils shall......determine thereon: provided, that in the said ordinance......the councils shall declare that the control of such neighboring property......is reasonably necessary, in order to protect such......parkways......their environs, the preserva-

tion of the view, appearance, light, air, health, or useful-
ness thereof." Section 3 confers upon cities the right
"to resell such neighboring property with such restric-
tions in the deeds of resale in regard to the use thereof
as will fully insure the protection of such......park-
ways......their environs, the preservation of the view,
appearance, light, air, health and usefulness thereof,
whenever the councils shall......determine thereon."
Section 4 declares the appropriation of property for
such purposes "to be taking......for public use."

Pursuant to the authority conferred by the act and
for the purposes therein specified the councils of Phila-
delphia passed an ordinance on July 3, 1912, section one
of which appropriated certain described private prop-
erty located outside and within two hundred feet of the
parkway, a projected street extending northwestward
from City Hall to Fairmount Park, which appropriation
includes property owned by the plaintiff company de-
clared to be necessary to protect the parkway. By an
ordinance of January 16, 1913, the mayor was author-
ized on behalf of the city to enter into an agreement with
the Bell Telephone Company of Pennsylvania by which
the company should convey in fee to the city for the con-
sideration of one dollar three certain lots of ground at
the northeast corner of North Seventeenth and Arch
streets and abutting on the parkway, and the city should
acquire by deed or condemnation proceedings the prop-
erty outside of and adjacent to the parkway and ad-
joining the property of the telephone company, Arch
street, Appletree street and property then owned by the
city, which includes plaintiff's property, and with cer-
tain restrictions convey the same and the lots agreed to
be conveyed to the city by the company, except the small
portion thereof included in the parkway, to the telephone
company. The consideration to be paid by the company
to the city was ninety per cent. of the cost of acquiring
the property by condemnation.

The Pennsylvania Mutual Life Insurance Company filed this bill against the city, averring, inter alia, that it is the owner in fee of two certain lots together with the brick houses erected thereon, located on the north side of Arch street, containing in front sixty-six feet, and extending northwardly to the south side of Appletree street, a depth of one hundred and sixty feet; that the city has authorized the proper officials to acquire title to the property within the lines of the parkway and within two hundred feet thereof; that the parkway passes diagonally across the rear of the plaintiff's lots; that the property taken under the ordinance of July 3, 1912, includes not only the portion of the plaintiff company's lots included within the lines of the parkway but also the entire balance of its property which lies within two hundred feet of the parkway; that the portion of its property lying outside of the parkway was taken by the city to resell to the Bell Telephone Company of Pennsylvania, a private corporation, or to other private parties; that it objects. to the city taking so much of its property as lies outside the parkway, and avers its intention to improve such property by the erection of new structures thereon with such uniform restrictions as the city may constitutionally impose; that it is advised that the proposed taking of its property beyond the lines of the parkway is without authority of law, as the same is not being taken for public use, and because plaintiff's property is being taken to an extent greater than the city is legally authorized to appropriate. The bill prays that the Act of 1907, section 1 of the ordinance of July 3, 1912, and the ordinance of January 16, 1913, be declared unconstitutional, null and void, and that the mayor and director of the department of public works be enjoined from condemning and taking and from selling or transferring to any person such parts of the plaintiff's property as are not within the lines of the parkway. The answer admits substantially such averments of the bill as are necessary to the disposition of the case here.

It denies that the part of the plaintiff's property outside of the parkway was appropriated to sell to the telephone company, but admits that it was taken to secure the control of the property in order to protect the parkway as authorized by the Act of 1907. This denial must be read in connection with the ordinance of January 16, 1913, which became effective after the answer of the city was filed, authorizing the mayor to execute an agreement selling the property appropriated outside the parkway, including plaintiff's property, to the telephone company.

The view we take of this case requires us to determine the single question whether the purpose or use for which the city intends to take the plaintiff's land is a public use within the constitutional provision permitting its appropriation under the power of eminent domain. Under our former constitutions, it was declared that no man's property can be justly taken from him or applied to public use without his consent and just compensation being made. The present Constitution, however, provides that private property shall not be taken or applied to public use without authority of law and without just compensation being first made or secured. The right, therefore, to appropriate private property in this State for a public use must now be conceded, and it is equally true that private property cannot be taken for a private purpose. The difficulty is in determining in the particular case what is a public use for which such property may be taken. Primarily this is a question for the legislative department of the government, but ultimately for the courts. "Whether it be expedient or wise for the legislature to exercise this authority, to take property for public use," says Mr. Justice DEAN, in Philadelphia, Morton & Swarthmore Street Railway Company's Petition, 203 Pa. 354, 362, "is purely a political question and one solely for the legislature. But whether the use to which it is sought to appropriate the property authorized to be taken is a public use is a judicial question for

the determination of the courts." There is no constitutional or statutory definition of the words "public use," and none of the adjudicated cases has given a definition of the words which can have universal application. It has been held that the words are equivalent to public benefit or advantage, while numerous other cases hold that to constitute a public use the property must be taken into the direct control of the public or of public agencies, or the public must have the right to use in some way the property appropriated. See 1 Lewis Em. Dom. (3d Ed.), para. 257. The learned author, after discussing both views of the subject and referring to the many cases which have aligned themselves on either side, says (para. 258) : "The use of a thing is strictly and properly the employment or application of the thing in some manner. The public use of anything is the employment or application of the thing by the public. Public use means the same as use by the public, and this it seems to us is the construction the words should receive in the constitutional provisions in question." This interpretation, says the same author (para. 258), will cover every case of appropriation that has been deemed lawful by any court, except a few in relation to mills, mines and drainage.

Judge COOLEY (Const. Lim., 7th Ed., 766) says: "The public use implies a possession, occupation and enjoyment of the land by the public at large or by public agencies...... It may be for the public benefit that all the wild lands of the State be improved and cultivated, all the low lands drained, all the unsightly places beautified, all dilapidated buildings replaced by new; because all these things tend to give an aspect of beauty,...... and gratify public taste; but the common law has never sanctioned an appropriation of property based on these considerations alone."

In delivering his opinion in Bloodgood v. The Mohawk and Hudson Railroad Company, 18 Wend. 9, 65, Tracy, Senator, said: "Can the constitutional expres-

sion, public use, be made synonymous with public improvement, or general convenience and advantage, without involving consequences inconsistent with the reasonable security of private property; much more with that security which the constitution guarantees? If an incidental benefit, resulting to the public from the mode in which individuals in pursuit of their own interests use their property, will constitute a public use of it, within the intention of the constitution, it will be found very difficult to set limits to the power of appropriating private property." Mr. Justice PEARCE, delivering the opinion in Arnsperger v. Crawford, 101 Md. 247, 253, says: "There will be found two different views of the meaning of these words which have been taken by the courts; one, that there must be a use, or right of use, by the public, or some limited portion of the public; the other, that they are equivalent to public utility or advantage. If the former is the correct view, the legislature and the courts have a definite, fixed guide for their action; if the latter is to prevail, the enactment of laws upon this subject will reflect the passing popular feeling, and their construction will reflect the various temperaments of the judges, who are thus left free to indulge their own views of public utility or advantage. We cannot hesitate to range this court with those which hold the former to be the true view."

We think this interpretation of the words "public use" is in accord with their plain and natural signification and with the weight of the best considered authorities. It furnishes a certain guide to the legislature as well as to the courts in appropriating private property for public use. It enables the state and the owner to determine directly their respective rights in the latter's property. If, however, public benefit, utility or advantage is to be the test of a public use then, as suggested by the authorities, the right to condemn the property will not depend on a fixed standard by which the legislative and judicial departments of the government are to be guided,

but upon the views of those who at the time are to determine the question. There will be no limit to the power of either the legislature or the courts to appropriate private property to public use except their individual opinions as to what is and what is not for the public advantage and utility. If such considerations are to prevail, the constitutional guarantees as to private property will be of small moment.

Let us now turn to the case under consideration. Applying the doctrine that to constitute a public use for which private property may be appropriated there must be a use or right of use by the public it is apparent, we think, that the sections of the Act of 1907, authorizing the acquisition of private property outside a public park, parkway or playground, are not a constitutional exercise of legislative authority. It will be observed that these sections confer authority to appropriate and resell with such restrictions as may be prescribed property outside the lines of the parkway, and it is justified by declaring that it is done in order to protect the parkway and for "the preservation of the view, appearance, light, air, health or usefulness thereof." The protection of the highway is the only "public use" to which the land is to be applied. The property is not to be taken and held by the city for any use for which a statute confers on the city the right to appropriate it. Saving the restriction contained in the conveyance, the city can exercise no control over it, and hence cannot use it for any purpose. The only possible "use," therefore, which the city can make of the property is to impose restrictions on it or impress it with an easement in the hands of the city's vendee. As said by the learned court below, the act contains a feature entirely new in this State, and authorizes the taking by the city of property which is not to be used by the public as part of its park, parkway or playground but is to be sold in fee to private parties for private use after it has been charged with an easement for the protection of the public improvement. Prior to this legisla-

tion the State had not authorized the taking of private property by the exercise of the power of eminent domain for such purpose. It is a step far in advance of the policy of the State as heretofore declared in her organic law, and is a liberal construction of a power which we have uniformly held must be strictly construed. "The exercise of the right of eminent domain, whether directly by the State or its authorized grantee," says THOMPSON, J., in Lance's Appeal, 55 Pa. 16, 26, "is necessarily in derogation of private right, and the rule in that case is that the authority is to be strictly construed."

A municipality has the unquestioned right to appropriate property for its highways, and it determines in the first instance the necessity for taking the property for the purpose. It may lay out its streets in the manner it deems proper. It may fix the width of and divide the highways as it thinks should be done. It is not compelled to use the ground appropriated for the highway solely for sidewalks and cartways, but may devote part of it to æsthetic purposes, and ornament and beautify it. This is a legitimate use of the land in connection with the primary purpose for which property may be appropriated for a public thoroughfare. It, however, contemplates occupancy or possession by the city of the land taken for the highway, and not that it shall be owned and in possesion of a private party. This construction of the powers of the municipality to condemn property will permit the city in the present case to carry into effect the purpose the learned trial judge says it has "to build a noble highway from the City Hall to Fairmount Park which shall by its character beautify the city and increase its attractiveness and renown," without invading the constitutionally protected right of private property.

Holding, as we do, that the use to be made of property located outside a public highway is not a public use for which private property may be taken by the city against

the consent of the owner, the effect of the Act of 1907 authorizing the appropriation of property for such purpose is to permit by the exercise of eminent domain the taking of the property of one citizen without his consent and vesting the title thereto in another. No court in this country has yet sanctioned such action by the State or its representative exercising the power of eminent domain. Says Mr. Justice STORY, speaking for the court in Wilkinson v. Leland, 27 U. S. 658: "We know of no case, in which a legislative act to transfer the property of A. to B., without his consent, has ever been held a constitutional exercise of legislative power, in any state in the Union. On the contrary, it has been constantly resisted, as inconsistent with just principles, by every judicial tribunal in which it has been attempted to be enforced." It is true that in the present case the declared purpose in taking the property is to protect the highway and preserve the light, air, etc., but, if that be conceded to be a legitimate public use, the city is not permitted to hold it for that or any other purpose. The statute compels the city to sell and divest itself of the control or use of the property. The restriction imposed by the act which is to be inserted in the deed does not remove the objection that the act authorizes the city to take the property from one citizen without his consent and transfer it to another. The act does not require the property to be resold to the party from whom it has been taken, which might justify the contention that the only purpose in making the appropriation was to impose an easement for the benefit of the highway but it is to be held by the city as a fee simple owner who can sell to whomsoever it pleases. It deprives the owner of his right to accept the restrictions and retain the property on the same terms as the city's vendee would hold it. It empowers the city, at the pleasure of its officials, to transfer property on which is a business plant owned by one individual or corporation to another who is engaged in the same or another business. One man may be de-

prived of his home for the benefit of another.  In view of its provisions conferring almost unlimited discretion on cities or their officials in exercising the powers granted, it is idle to say that the statute furnishes no opportunity to produce such results or to promote a private purpose.

We are all of the opinion that so much of the Act of 1907 as authorizes and provides for the appropriation by cities of neighboring private property within two hundred feet of the boundary lines of property taken and appropriated for public parks, parkways, and playgrounds, and section 1 of the ordinance of July 3, 1912, and the ordinance of January 16, 1913, passed in pursuance thereof, are unconstitutional, null and void.  It follows that the city is without authority under the act to appropriate the plaintiff's land and resell it to the Bell Telephone Company or to any other party in pursuance of the ordinances passed for that purpose, and that the prayer of the plaintiff's bill restraining such action by the city should have been granted.  The plaintiff's appeal must, therefore, be sustained, and the defendant's appeal be dismissed.  The court below is directed to enter a decree declaring unconstitutional and void so much of the Act of June 8, 1907, P. L. 466, as authorizes cities to take and appropriate neighboring private property within two hundred feet of the boundary line of property appropriated for public parks, parkways, and playgrounds, and section 1 of the ordinance of July 3, 1912, and the ordinance of January 16, 1913, passed in pursuance and by authority of said act, and enjoining perpetually the city from appropriating plaintiff's property outside of and adjacent to the parkway.

The decree of the court below, as thus amended, is affirmed.  Costs in both appeals to be paid by the City of Philadelphia.