DAVID STONEMAN *vs.* CITY OF BOSTON.

SAME *vs.* SAME.

SAME *vs.* SAME.

SAME *vs.* SAME.

Suffolk.     March 5, 1928. — April 3, 1928.

Present: RUGG, C.J., BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Landlord and Tenant*, Construction of lease, Covenant to pay taxes. *Boston*. *Tax*, On real estate leased by the city of Boston, Recovery of tax unlawfully assessed. *Contract*, Implied. *Words*, "Business purposes."

By the provisions of a lease in writing of land, the lessee covenanted to pay, at stated periods, "all taxes, said taxes to be recoverable as if same were rent in arrears," on the basis of a certain part of "the last previous tax bill paid by the Lessor," apportioned for monthly payments. During the term of the lease, the lessor died and devised the property to the city of Boston as part of a permanent trust fund. Thereafter St. 1922, c. 390, was enacted. The trust property was managed by a board of trustees, who employed a manager. Taxes were assessed to the lessee "et al." and bills therefor were presented by the tax collector to the trustees at the direction of their manager. The manager included in

bills for rent sent to the lessee the amounts of the proportional parts of such bills. The lessee sent checks for such taxes, each accompanied by a letter of protest, to the manager, who paid the amounts so received to the city but did not turn over to the collector of taxes the letters of protest. The lessee never received any tax bills for the premises direct from the city. The manager stated to the lessee that the taxes must be paid or the leases would be imperilled. The lessee brought an action for money had and received against the city to recover such payments. *Held,* that

(1) The lessee's covenant to pay taxes was not limited to taxes assessed to the landlord and payable in the first instance by him;

(2) There was a "different agreement between" the parties within the meaning of G. L. c. 59, § 15;

(3) The lessee could not recover under G. L. c. 59, § 15;

(4) The payments by the plaintiff were voluntary and he could not recover from the defendant under G. L. c. 60, § 98.

Where it appeared that seventeen of the twenty-nine tenants occupied the premises above described under the lessee for business purposes, and the remaining tenants were single lodgers who occupied one or two rooms, a contention by the plaintiff, that St. 1922, c. 390, was not applicable to the premises because they were not leased by the city "for business purposes," was not tenable.

THREE ACTIONS OF CONTRACT OR TORT. Writs dated, respectively, January 12, 1926, June 19, 1926, and October 18, 1926. Also, an action of

CONTRACT. Writ dated April 13, 1926.

In the Superior Court, the actions were heard upon an agreed statement of facts by *Sisk,* J., who, without decision, reported them for determination by this court under G. L. c. 231, § 111.

*H. S. Davis,* (*R. S. Wilkins* with him,) for the plaintiff.

*J. P. Lyons,* Assistant Corporation Counsel, for the defendant.

PIERCE, J. These are four cases which come before this court on a report of all the material facts, without decision, by a judge of the Superior Court, in accordance with the provisions of G. L. c. 231, § 111. The four actions present the same issues and they are to be treated as one case in the determination and application of the questions of law.

George Robert White, deceased, at the time of his death owned many parcels of real estate in the city of Boston, among which were the premises numbered 478 and 480 Boylston Street, and the premises on said Boylston Street

numbered 482, 484, 486 and 488. By an indenture dated
July 17, 1912, he demised to Benjamin Kabatznick and
Simon Burman the premises numbered 482–488 Boylston
Street, for a term of fifteen years from August 1, 1912. Bur-
man thereafter transferred his interest in the lease to Kabatz-
nick. By an indenture dated March 11, 1920, White demised
to Kabatznick for a term of ten years and three months from
May 1, 1920, the premises numbered 478–480 Boylston
Street, at the same time extending the lease dated July 17,
1912, so that it should terminate August 1, 1930. These
leases were eventually assigned to the plaintiff, David Stone-
man, and he took possession thereunder on or about Octo-
ber 4, 1923, and has since paid the rent and been recognized
as lessee.

The lessee covenanted in each indenture that he and his
assigns "will from time to time pay all taxes, said taxes to
be recoverable as if same were rent in arrears"; and it was
agreed in the lease dated July 17, 1912, as also in the lease
dated March 11, 1920, with necessary changes in point of
detail, "that the taxes hereinafter provided to be paid by
the Lessees are to be paid by them in the following manner
viz:—with each monthly payment of rent, the Lessees shall
pay the Lessor one-twelfth of the last previous tax bill paid
by the Lessor and on the first day of November 1912 any
difference either way between the sum of the payments due
September first 1912 and October first 1912 and one-sixth
of the tax bill finally due on November first 1912 shall be
adjusted between the Lessor and the Lessees; and on the
first day of November in each year thereafter during the
continuance of this lease any differences either way between
the last six months previous monthly payments and one-half
the tax bill finally due on that day shall then be adjusted
between the Lessor and the Lessees."

White died on or about January 27, 1922, leaving a will
which was duly admitted to probate on March 29, 1922.
The will provided in "Article Fourteenth" that the rest and
residue of his property of every nature should go to the city
of Boston, "to be held as a permanent charitable trust fund
. . . the net income only to be used for creating works of

public utility and beauty, for the use and enjoyment of the inhabitants of the City of Boston." The will directs that the "control and management of said Trust Fund . . . shall be in the hands of a board of five trustees." In the record this board is referred to as the "Trustees of the George Robert White Fund."

After the city of Boston had voted to accept the devises and bequests contained in the will, St. 1922, c. 390, was enacted and became law on May 9, 1922. This statute reads as follows:

"Section 1. The lands and buildings owned by the city of Boston in fee, in trust or otherwise may, if leased for business purposes, be taxed by the assessors of taxes of said city and the taxes assessed to the lessees thereof or to their assigns in the same manner and to the same extent as if said lessees were the owners thereof in fee. Payment of the said taxes shall not be enforced by any lien upon or sale of the said lands and buildings, but the interests of said lessees or their assigns therein may be sold by the collector of taxes of said city for the non-payment of the taxes assessed as aforesaid, in the manner provided by law for the sale of real estate for non-payment of local taxes. Said collector of taxes may maintain against the persons assessed as aforesaid or their legal representatives actions in his own name for the taxes so assessed in the manner provided by law for the collection of other local taxes.

"Section 2. This act shall take effect upon its passage but, for the purposes of taxation in the year nineteen hundred and twenty-two, the said lessees shall be subject to taxation as of April first, nineteen hundred and twenty-two."

After the passage of St. 1922, c. 390, the assessors of the city of Boston assessed the lessees' and the assignee's interests in the above described property each and every year until the time of the bringing of these actions. For the year 1925 they assessed all the parcels "to David Stoneman et al., Lessees." The tax bills for the years 1923, 1924 and 1925, which were made out in accordance with the assessments, were sent by the city collector to the trustees of the George Robert White fund by the direction of one George E. Phelan,

who was employed by the trustees and has acted as manager of the entire property of the fund during the time of the matter in controversy between the plaintiff and defendant, with an office in the City Hall, Boston. After the bills were received the trustees charged each month one twelfth of the amount of the tax to the plaintiff, and included it in the rent bills which they sent monthly to the plaintiff. The plaintiff paid without objection some of the rent bills to which had been added one twelfth of the taxes, but from December, 1924, sent with each check, the amount of which was in full for the bill sent by the trustees, a letter, in substance as follows: "Enclosed please find my check for $. . . covering rent for the month of . . . of premises 478–488 Boylston Street, Boston, Mass. I am paying you this amount under protest and without prejudice to me, and expressly reserve all rights either in fact or in law which I am entitled to in the premises." The letters of protest were all sent to the "Trustees of George Robert White Fund," and were received by its manager, Mr. Phelan, "who did not turn the same over to the city collector." Phelan testified that "the Trustees . . . paid to the city the taxes received on the assessments made to the lessees and that the city got the full amount of these taxes."

It is agreed "that the plaintiff has never personally physically occupied the premises leased or any portion thereof, the entire premises being occupied by tenants claiming under the plaintiff . . . that the leased premises consist of three brick buildings occupied by about twenty-nine tenants; that the street floors and eleven offices or rooms up one flight are occupied by about eleven different tenants, who use the same for business purposes solely; that three rooms on the third floor of one of the buildings are occupied by three different tenants for business purposes; that three rooms on the fourth floors of two buildings are occupied by different tenants for business purposes; that seven rooms on the third floors are occupied by lodgers as lodgings; that five rooms on the fourth floor of one of the buildings are occupied by lodgers as lodgings, and that one room is vacant. That substantially the same situation has existed at all times covered by the suits now reported; that there are and were

no families occupying suites, but that the lodgers are and have been single people occupying one or two rooms; that all of the occupants of the said buildings are and have been tenants under the plaintiff. It is further agreed that the plaintiff had some talks with Mr. Phelan in the latter part of the year 1923 on the subject of these taxes, and that Mr. Phelan said in substance that same must be paid or the leases would be imperiled. The plaintiff never received any tax bills direct from the city of Boston referring to the premises in question or his interest as lessee."

The declaration in each action contains with special counts a count for money had and received covering all the payments which are the subject of the action, and a count seeking to recover the same items as money paid to the defendant's use. The answer in each action is a general denial.

In the absence of an enabling statute, the property in question held in fee by the city upon the express trusts created by the will of George Robert White could not be taxed to the city. *Burr* v. *Boston*, 208 Mass. 537. The Commonwealth has the sovereign right to subject to taxation all real property located within its boundaries, and no constitutional right is infringed if it permits under statutes similar to St. 1904, c. 385, § 1, or to St. 1922, c. 390, some such property to be taxed locally while other such property is not taxed. *Boston Fish Market Corp.* v. *Boston*, 224 Mass. 31. In the case at bar the tax assessed to the lessees or lessee under St. 1922, c. 390, although a tax on the whole estate and not merely upon the leasehold interest of the tenant, does not give the tenant for the time being, who shall pay the tax, a right to recover the sums paid of the landlord, in the present case the city of Boston, under Gen. Sts. c. 11, § 9 (now G. L. c. 59, § 15), because there is a "different agreement between them." *Boston Molasses Co.* v. *Commonwealth*, 193 Mass. 387.

The covenant in each lease is a broad one which obligates the lessee and his assigns to pay from time to time all taxes lawfully assessed upon the property described in the leases, and when read in connection with the provision as to how the taxes which have been assessed to and paid by the lessee

shall be adjusted as between the landlord and tenant, does not have the narrow meaning, contended by the plaintiff, "that the lessee's obligation is limited to reimbursing the landlord for taxes assessed to the landlord and payable in the first instance by him."    We find nothing adverse to this view in *Massachusetts General Hospital* v. *Boston,* 212 Mass. 20, or in *Campbell* v. *Haven,* 211 Mass. 121.

The contention of the plaintiff that St. 1922, c. 390, is not applicable to the premises held by the plaintiff as the tenant of the city of Boston, because such premises are not leased "for business purposes," is without force under a fair construction of the intent of the legislation as applied to the admitted facts.    The statute manifestly contemplates a dominant use of the premises for business purposes and does not make the right to tax fluctuate until it may be determined whether any part of the premises are at any time being used for nonbusiness purposes.

The plaintiff is not entitled to recover back the moneys paid to the trustees under G. L. c. 60, § 98.    The tax collector of the city of Boston never sent any tax bills to the plaintiff and the "plaintiff never received any tax bills direct from the city of Boston referring to the premises in question or his interest as lessee."    The tax collector never gave the plaintiff any notice of a purpose to sell the interest of the lessees or of their assigns for the nonpayment of the taxes assessed under St. 1922, c. 390, and the plaintiff never sent "a written protest signed by him" to the collector of taxes. In a word, the payments were voluntary and the plaintiff is not entitled to a recovery from the defendant in any one of the four actions, although no obligation to make such payments existed.    *Lee* v. *Templeton,* 13 Gray, 476.    *Rosenfeld* v. *Boston Mutual Life Ins. Co.* 222 Mass. 284, 289.    *French* v. *Kemp,* 253 Mass. 75, 79.

                         *Judgment for the defendant.*