SAMUEL CABOT & others *vs.* ASSESSORS OF BOSTON
& others.

Suffolk.    October 4, 1956. — November 28, 1956.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, & CUTTER, JJ.

*Boston Common.    Taxation,* Real estate tax: exemption.    *Municipal
Corporations,* Use of municipal property.    *Constitutional Law,* Taxa-
tion, Equal protection of laws, Public purpose.    *Declaratory Judgment.
Equity Jurisdiction,* Declaratory relief.    *Equity Pleading and Practice,*
Parties, Declaratory proceeding, Bill, Demurrer.    *Words,* "Inhabit-
ant."

Taxpayers of a city had no standing in a suit in equity against the city,
its assessors, and a corporation to seek declaratory relief, independ-
ently of any other relief they were entitled to seek, with respect to a
tax exemption granted to the corporation by statute.    [57]
An allegation in the bill in a suit in equity that a certain described use of
real estate was for a private business purpose and not for a public
purpose was a conclusion of law not admitted by a demurrer.    [58]
St. 1946, c. 294, as amended, authorizing the construction and operation
by a private corporation for profit of a garage under Boston Common,
with the approaches thereto, and the giving of a lease by the city of
Boston as owner of the Common to the corporation, was enacted for
the public purpose of alleviating traffic congestion in the public ways
in Boston;   and § 2A of the statute, inserted by St. 1948, c. 654, § 1,
granting to the corporation exemption from taxation as to the leased
portion of the Common and the garage property, was likewise enacted
for that public purpose as an appropriate incident of the entire legisla-
tive scheme.    [58, 64-65]
Section 2A of St. 1946, c. 294, inserted by St. 1948, c. 654, § 1, which was
enacted as a part of the legislative scheme of c. 294 of furthering the
public purpose of alleviating traffic congestion in the ways of Boston
through the construction and operation of a garage under Boston
Common by a private corporation for profit as lessee under a lease
to be given by the city of Boston as owner of the Common, does not
violate the requirement of Part II, c. 1, § 1, art. 4, of the Constitu-
tion of Massachusetts that taxes be "proportional and reasonable,"
nor deny equal protection of the laws in violation of the Fourteenth
Amendment to the Federal Constitution, in granting to the corpora-
tion exemption from taxation as to the leased portion of the Common
and the garage property.    [60, 68-71]

The Legislature has as broad powers respecting taxation or exemption from taxation of a portion of Boston Common leased by the city of Boston by legislative authority for use by the lessee in the furtherance of a public purpose as if title to the Common were in the Commonwealth. [62]

The fact that the private corporation contemplated by St. 1946, c. 294, as amended, to be organized to construct and operate a garage under Boston Common as lessee of the city in order to alleviate traffic congestion in the ways of Boston was not subjected by the statute to public regulation of its rates or service did not show that the scheme of the statute was not directed at a public purpose. [65–67]

PETITION, filed in the Superior Court on December 9, 1955.

The suit was heard by *Cahill,* J., on demurrers.

*Richard Wait,* (*Raymond H. Young* with him,) for the petitioners.

*William H. Kerr,* (*William L. Baxter,* Corporation Counsel, with him,) for the respondents city of Boston and others.

*James D. St. Clair,* (*Norman B. Asher* with him,) for the respondent Boston Common Garage, Inc.

CUTTER, J. Ten taxpayers of Boston and three garage corporations, doing business in Boston and paying taxes on their property there, have brought this petition under G. L. (Ter. Ed.) c. 40, § 53, purporting also to seek relief under G. L. (Ter. Ed.) c. 231A, § 6, against the city, its three assessors and Boston Common Garage, Inc., a private corporation (hereinafter called Garage, Inc.). Garage, Inc., is the lessee of a portion of Boston Common, to be used for garage purposes, under a lease made pursuant to St. 1946, c. 294, as amended by St. 1948, c. 654, St. 1951, c. 355, and St. 1955, c. 529.

The petition seeks to restrain the assessors from assessing taxes on property in Boston for the year 1956 without likewise assessing taxes for that year upon the portion of Boston Common leased to Garage, Inc. It also seeks declarations (1) that the city cannot constitutionally raise money by taxing property within the city unless taxes are assessed to Garage, Inc., with respect to the leased portion of Boston

Common, and (2) that, notwithstanding an express exemption found in St. 1946, c. 294, § 2A, inserted by St. 1948, c. 654, § 1, the assessors are under a duty to assess a tax to Garage, Inc., with respect to the leased premises.

Demurrers to the petition, filed by the city, the assessors and Garage, Inc., were sustained and a final decree dismissing the petition was entered. Appeals were taken by the petitioners. The facts set forth below are alleged in the petition.

Statute 1946, c. 294, § 2, authorized the city "to enter into a contract with a private corporation for the construction and operation, at the expense of the corporation and without cost to the city, of a garage for motor vehicles under Boston Common . . . together with all necessary and convenient approaches above and below ground; . . . and of an underground passageway from said garage with entrance and exit at or near the corner of West and Tremont streets . . . and to grant a lease for such purposes to such corporation for a term of not exceeding forty years . . . ." The city by § 2 is also authorized to permit construction of a two lane traffic tunnel under the Public Garden, Charles Street and the Common from Commonwealth Avenue at or near Arlington Street to the proposed garage. The lessee, by the statute, is to pay a rental equivalent to not less than two per cent of its gross receipts.

The city owns Boston Common in fee. *Lowell* v. *Boston*, 322 Mass. 709, 741, appeal dismissed sub nomine *Pierce* v. *Boston*, 335 U. S. 849. By a lease dated November 3, 1955, it leased to Garage, Inc., for business purposes, for a term of forty years beginning on that date, so much of Boston Common as was to be actually occupied by a garage under a part of Boston Common, including the approaches, an underground passageway and certain appurtenances, all as set out in attached plans. Garage, Inc., agreed to build the garage in accordance with the plans and was given permission to construct the approaches from Commonwealth Avenue, mentioned above. The lessee, by the lease, was required to pay all taxes validly assessed as of any date during the term

"against the demised premises or against the lessee with respect to the demised premises."

The corporate petitioners[1] each own in fee, and operate, a garage within 2,000 feet of the entrance of the projected garage and will be subjected to competition by Garage, Inc. Statute 1946, c. 294, does not authorize the city to control rates to be charged or otherwise to regulate the operation of the proposed garage and the city intends to refrain from such control or regulation.

Statute 1948, c. 654, § 1, inserted in St. 1946, c. 294, a new section, § 2A, reading, "No private corporation mentioned herein shall be assessed any tax upon any real estate, garage, underground passageway or traffic tunnel of which it is lessee hereunder or upon any structures or facilities constructed under any construction contract or lease while such lease is in force, the provisions of any general or special law to the contrary notwithstanding."

The respondents other than Garage, Inc., contend that § 2A merely expressly confirms an exemption of city owned land, leased for public purposes, which would exist even without the enactment of § 2A and that, in any event, § 2A is valid. The petitioners assert that the operation of the proposed garage is in the nature of a private business and does not constitute a public use or a public purpose. Accordingly, they contend that § 2A grants a tax exemption, which (1) violates the provision relating to "proportional and reasonable . . . taxes" of Part II, c. 1, § 1, art. 4, of the Constitution of Massachusetts; and (2) denies the petitioners and others similarly situated the equal protection of

---

[1] The applicable statute does not purport to give these corporate petitioners standing to bring a ten taxpayers' proceeding. Under G. L. (Ter. Ed.) c. 40, § 53, such a proceeding must be brought by "ten taxable inhabitants." The word "inhabitant" normally would mean a natural person and in practical operation the statute seems to have been so construed. See G. L. (Ter. Ed.) c. 4, § 7, Fourteenth. Compare *Opinion of the Justices*, 122 Mass. 594, 596–598; *Glass* v. *Glass*, 260 Mass. 562, 565, and cases there cited. General Laws (Ter. Ed.) c. 40, § 53, creates a remedy which would not otherwise exist and those proceeding under it must come squarely within its terms. See *Fuller* v. *Trustees of Deerfield Academy*, 252 Mass. 258, 259–260; *MacDonald* v. *Street Commissioners of Boston*, 268 Mass. 288, 290, 297–298; *Povey* v. *School Committee of Medford*, 333 Mass. 70, 71–72. Compare *Pilgrim Real Estate, Inc.* v. *Superintendent of Police of Boston*, 330 Mass. 250.

the laws in violation of the Fourteenth Amendment to the Constitution of the United States.[1]

The assessors do not propose to make any assessment in 1956 to Garage, Inc., with respect to the leased property. They do, however, propose to assess the individual and corporate petitioners 1956 taxes with respect to their taxable property in Boston.

The petitioners assert that an actual controversy exists between the petitioners and the several respondents with respect to the duties of the latter under § 2A and with respect to the validity of § 2A.

No procedural questions are raised as grounds of demurrer. A ten taxpayers' suit may be brought, under G. L. (Ter. Ed.) c. 40, § 53, to restrain a tax levy, alleged to be generally invalid. *Dowling* v. *Assessors of Boston,* 268 Mass. 480, 483–486. See *Newhall* v. *Assessors of Brookline,* 329 Mass. 100, 102. However, in addition to seeking injunctive relief under G. L. (Ter. Ed.) c. 40, § 53, this petition also prays for declaratory relief under G. L. (Ter. Ed.) c. 231A, § 6 (inserted by St. 1945, c. 582, § 1). We think, however, that the petitioners have no standing entitling them to obtain declaratory relief independently and apart from their statutory standing to seek injunctive relief under G. L. (Ter. Ed.) c. 40, § 53. See *Povey* v. *School Committee of Medford,* 333 Mass. 70, 71–72; *Berry* v. *Quincy,* 334 Mass. 703. Any declaratory relief granted under G. L. (Ter. Ed.) c. 231A, § 6, in this proceeding is not a matter of right and is wholly dependent upon whatever right to injunctive relief may exist under G. L. (Ter. Ed.) c. 40, § 53. Since the petition does not state an independent basis which, standing alone, permits declaratory relief to these petitioners, we need consider, in passing upon the issues raised by the demurrers, only the question whether a case for injunctive relief under G. L. (Ter. Ed.) c. 40, § 53, is stated by the petition. If no basis for such injunctive relief is stated

---

[1] The Attorney General has been given due notice of the pendency of this petition (where the constitutional validity of § 2A is raised) as required by the last sentence of G. L. (Ter. Ed.) c. 231A, § 8, inserted by St. 1945, c. 582, § 1.

in the petition, there was no error in sustaining the demurrers. However, a decision in the ten taxpayers' proceeding necessarily involves a determination of the issues on which a binding determination is sought, so, as a matter of discretion and to avoid possible future litigation, our decision affords the determination sought by the petitioners.

The petition alleges that the "operation of the said garage is in the nature of a private business, and does not constitute a public use or a public purpose" and that the lease to Garage, Inc., was made "for business purposes." These allegations we view as conclusions not admitted by the demurrers. *United Shoe Machinery Corp.* v. *Gale Shoe Manuf. Co.* 314 Mass. 142, 145, 160. *Burnes* v. *Metropolitan District Commission*, 325 Mass. 731, 733–734. We have considered them as asserting, in substance, merely that a lease of the type described in the petition was made for the purposes contemplated by the authorizing statute, regarding the petitioners' characterization of these purposes as a conclusion of law.

The lease to Garage, Inc., however, plainly does have a "double aspect." See *Allydonn Realty Corp.* v. *Holyoke Housing Authority*, 304 Mass. 288, 292. From the standpoint of Garage, Inc., the lease is for its business use, in an attempt to make a profit. The petitioners, accordingly, contend that the leased property should be taxed because it is to be used by a private corporation for its own profit. However, from the standpoint of the city, the primary and only objective of the lease is to accomplish the public purpose set out in the legislation, namely, the abatement of the public nuisance, consisting of congestion of the public ways of Boston, caused by the great number of motor vehicles. See St. 1946, c. 294, § 1. The effect of the legislative declaration of this purpose has been fully discussed in *Lowell* v. *Boston*, 322 Mass. 709, 735–738. It was there decided that the conditions which gave rise to the 1946 statute and its public purpose justified the scheme adopted by the Legislature to accomplish that purpose. Apart from this primary purpose, it is plain that the lease would not have been

undertaken. As was said in *Lowell* v. *Boston* (at page 737) the "garage is an incident in a legislative plan designed to abate a public nuisance . . . a method employed to accomplish the primary purpose of the statute."

The question of the validity of the tax exemption granted by § 2A of the garage legislation, however, was not determined by *Lowell* v. *Boston*. That case was decided several weeks before the enactment (or introduction as a bill) of St. 1948, c. 654, which inserted § 2A in the 1946 statute. The intimation in the *Lowell* case (at page 734) that "the taxation of the garage is a matter for the General Court, and the occupant of commercial property located on land . . . held by the city in trust may be made liable for the tax" did not purport to deal finally with the question of tax exemption and, of course, could not have dealt with the exemption granted by the 1948 statute later enacted. Accordingly, we have for consideration, without any binding prior decision on the precise issue, the case of city property leased for a public purpose, where the Legislature, as an incident of its plan for accomplishing that purpose, has made explicit statutory provision that the property so leased shall be exempt from taxation.

Apart from specific statutory provisions, no taxes are imposed in Massachusetts upon municipally owned property used for public purposes. *Rossire* v. *Boston*, 4 Allen, 57, 59. See *Burr* v. *Boston*, 208 Mass. 537, 541–542, 544. The exemption extends to privately owned corporations within the limits stated below. In *Connecticut Valley Street Railway* v. *Northampton*, 213 Mass. 54, this court said (at page 56), "Generally speaking, property owned by the government, whether the ownership be in State, county, city or town, and exclusively used for public purposes, is presumed to be exempt from taxation. And this is so, even when the property is situated in another municipality within the State than the owner.[1] Nothing but the clearly expressed will of the law-making power to the contrary will overcome this

[1] See on this point *Wayland* v. *County Commissioners of Middlesex*, 4 Gray, 500, 501; *Collector of Taxes of Milton* v. *Boston*, 278 Mass. 274, 277; *Assessors of Quincy* v. *Cunningham Foundation*, 305 Mass. 411, 417.

presumption"; (at page 57), "early it was determined that certain real estate owned by public service corporations and exclusively devoted to public use was exempt from local taxation"; and (at page 58), "Only such land is exempt as the corporation has taken by right of eminent domain, or, having the right so to take, has purchased. In other words this right of exemption from taxation is coextensive with the right to take by eminent domain. . . . This exemption is not founded upon any express language of the tax acts, but upon judicial construction of them as dictated by considerations of justice and expediency."

Reasonable exemptions, both of public property and of the real estate used for public purposes, held by privately owned corporations, are not precluded by Part II, c. 1, § 1, art. 4, of the Constitution of the Commonwealth requiring that taxes on property must be "proportional and reasonable" nor by the more general provisions of art. 10 of the Declaration of Rights. See *Assessors of Quincy* v. *Cunningham Foundation*, 305 Mass. 411, 416–417, which (at page 418) recognized the validity, not only of these implied exemptions but also of further reasonable exemption of property used for public purposes when such exemptions are expressly granted by statute, as in § 2A inserted by the 1948 statute considered in the present case. All such statutory exemptions fall within the first category of exemptions described in *Opinion of the Justices*, 324 Mass. 724, at page 731, namely, "of property belonging to the public or devoted to uses of a public, quasi public, or patriotic nature or to . . . charitable . . . enterprises which tend in some measure directly or indirectly to relieve public burdens."

With respect to public property, the Legislature has broad authority to make it taxable in whole or in part if it desires to do so. *Boston Fish Market Corp.* v. *Boston*, 224 Mass. 31. In that case, this court considered whether certain flats in South Boston owned by the Commonwealth were taxable. Under St. 1909, c. 490, Part I, § 12,[1] these

---

[1] Now found in substance in G. L. (Ter. Ed.) c. 59, § 5, Second, as amended by St. 1951, c. 667, § 2.

.flats would be subject to taxation "if leased for business purposes." A lessee built market buildings upon these flats and leased them to dealers in fish and sea foods. It was contended that, because other similar flats (owned by the Commonwealth and leased by it to others) were not subject to taxation, the requirement of § 12 that the particular South Boston flats be subject to taxation was "in conflict with the requirement that all property taxes must be 'proportional and reasonable'" (page 34). As to this, after holding the lease to be one for business purposes, the court (per Rugg, C.J.) said at pages 34–35, "The sovereignty, being the owner of its property, has a right to do with it as it will with regard to subjecting it to taxation. While property held for a public use need not be made subject to taxation in order to render taxation of the people proportional and equal, if some property so held is made liable to taxation while other such property is not, no constitutional right of the citizen is infringed. The statute, in so far as it requires taxation of some of the property of the Commonwealth leased for purposes of general business, tends toward a closer approximation to equality of taxation than if all were freed from such imposts. It is not an arbitrary and capricious subjection of some private property and exclusion of other such property from the burdens of taxation. It is a dealing by the sovereign with some of its own property in such way as to lighten to that extent the general weight of taxation. The fact that some lessees of land of the Commonwealth, or some occupants of land of the Commonwealth under different kinds of tenure, have made contracts whereby they have not been required to pay taxes upon such property, gives the plaintiff no right to complain on constitutional grounds of the clause in its lease, wherein it has covenanted to pay taxes." With respect to the similar contention that § 12 of the 1909 act denied the equal protection of the laws in contravention of the Fourteenth Amendment to the Constitution of the United States, this court said (at page 35), "Equal protection of the laws does not require that all tenants of the

sovereign must hold by the same kind of tenure and be subject by contract to precisely the same liability to taxation. The variety of terms to which leases and other methods of occupancy are susceptible may secure all the equality which the fundamental law requires of a State in dealing with its property." See also *Stoneman* v. *Boston*, 263 Mass. 255, 260. Compare *Irving Usen Co. Inc.* v. *Assessors of Boston,* 309 Mass. 544.

Here we are dealing not with property of the Commonwealth, the sovereign, but with property of the city of Boston. However, Boston Common is a property held by the city "as an agency of the government for the benefit of the public, and . . . the power of the Legislature to represent this interest is supreme." See *Lowell* v. *Boston*, 322 Mass. 709, 730–731, 735, quoting with approval *Codman* v. *Crocker*, 203 Mass. 146, 153. See *Worcester County* v. *Mayor & Aldermen of Worcester*, 116 Mass. 193, 194 (county property, not owned by the Commonwealth but held for its benefit). We think that the powers of the Legislature with respect to the taxation or exemption of the leased portion of Boston Common property are as broad as if title to the Common were in the Commonwealth, as was the case with respect to the South Boston flats considered in the *Boston Fish Market* case (224 Mass. 31).

The conclusion which we reach in the present case is supported by a recent decision of the Supreme Court of Pennsylvania. See *Pittsburgh Public Parking Authority* v. *Board of Property Assessment*, 377 Pa. 274, 282, in which it was held that a lease of a publicly owned parking facility to a private group to operate for profit, in execution of the public purpose for which the facility was obtained, did not destroy the tax exemption of the property, although a lease for commercial purposes would have done so. (See pages 282–284, and see *West View Borough Municipal Authority Appeal*, 381 Pa. 416, 421). At pages 279–280, the court points out that if the public agency in charge of the facility "instead of leasing the properties, had made these same lessees its agents to operate the properties and on exactly

the same terms as provided in the leases there could be no question but that the privilege of tax exemption would not be affected thereby . . . ." The same reasoning is, of course, applicable to the present case. See also *Phoenix* v. *Landrum & Mills Realty Co.* 71 Ariz. 382, 388;[1] *Barnes* v. *New Haven*, 140 Conn. 8; *Gohld Realty Co.* v. *Hartford*, 141 Conn. 135, 143–144; *Trenton* v. *Lenzner*, 16 N. J. 465, 471, 474. Compare *Camden Plaza Parking, Inc.* v. *Camden*, 16 N. J. 150, 154–156.

The petitioners contend that the Legislature has exercised its power to tax to the lessee the leased portion of the Common by two statutes, one applicable to Boston and the other applicable on a State wide basis.[2] By St. 1922, c. 390, § 1, land owned by the city "if leased for business purposes" is made taxable. By G. L. (Ter. Ed.) c. 59, § 3A, as appearing in St. 1951, c. 667, § 1, such leased land is made taxable "if used or occupied for other than public purposes." As indicated earlier, the respondents contend

---

[1] Certain decisions in other States, it is contended, provide precedent for holding invalid the exemption granted in § 2A. These decisions deal with statutory provisions different from, and in general far less specific in declaring the legislative purpose (and the method of carrying it out) than, the provisions here involved. We do not feel constrained to follow these cases. See, for example, *San Francisco* v. *Ross*, 44 Cal. (2d) 52, holding (in a case involving no tax exemption) that eminent domain and public funds could not be used to acquire off-street parking space to be leased to a private operator, at least in the absence of specific provisions for regulation of the lessee's rates; *Opinion to the Governor*, 76 R. I. 365, advising that a proposed expenditure for a city yacht basin would be improper unless there should be struck out a provision for leasing the basin to private interests to operate for profit without regulation (no tax exemption was involved); *Foltz* v. *Indianapolis*, 234 Ind. 650, holding that restrictions to be imposed in a lease of publicly owned off-street parking facilities were not sufficiently explicit to ensure their devotion to the service of the public. The legislation authorizing the acquisition and lease of the facilities was held valid because the agency in charge was under a duty to take measures in its leases to protect the public. Tax exemption was not involved.

[2] Statute 1922, c. 390, § 1, provides in part that "The lands and buildings owned by the city of Boston in fee, in trust or otherwise may, if leased for business purposes, be taxed by the assessors of taxes of said city and the taxes assessed to the lessees thereof or to their assigns in the same manner and to the same extent as if said lessees were the owners thereof in fee." A somewhat similar provision of State wide application is found in G. L. (Ter. Ed.) c. 59, § 3A, as appearing in St. 1951, c. 667, § 1, which reads in part, "Real estate owned by . . . a city or town, if used or occupied for other than public purposes, shall be taxed to the lessee or lessees thereof, or their assigns, . . . in the same manner and to the same extent as if the said lessee or lessees or their assigns . . . were the owners thereof in fee, free of any trust."

that, even under these two statutes, the leased portion of Boston Common would be exempt from property taxation as public property used for public purposes. This question it is unnecessary to decide at this time in view of the express exemption of the leased property enacted in 1948 and found in § 2A of the garage legislation.[1] We consider that exemption to be valid, for we cannot say that it was beyond the power of the Legislature to adopt it as an incident of its plan for relieving traffic congestion in Boston.

In the light of the authorities just reviewed, we are of the opinion that the explicit exemption contained in § 2A is a valid exercise of the supreme authority of the Legislature with respect to Boston Common, even though the garage is leased to a private corporation operating it for profit in its own business, and even though other leased municipal properties, whose lessees use them for their business purposes, remain taxable. The broad public purpose (see *Lowell* v. *Boston*, 322 Mass. 709, 735–738) of abating the nuisance of traffic congestion must be held to support the whole garage scheme, just as the municipal public purpose of abating nuisances has been held sufficient to justify the exercise of the power of eminent domain or the expenditure of public funds. *N. Ward Co.* v. *Street Commissioners of Boston*, 217 Mass. 381, 385 (garbage disposal). *Allydonn Realty Corp.* v. *Holyoke Housing Authority*, 304 Mass. 288, 294 (slum clearance). See *Tate* v. *Malden*, 334 Mass. 507, 508 (off-street parking, presumably to abate the nuisance of street congestion). In the *Allydonn Realty* case, just cited, the propriety of tax exemption in such a case was recognized, the court saying (at page 297, see page 291), "As soon as it is established that the primary purpose of the statute is a public purpose, the various provisions for the creation of housing authorities . . . exercise of the right of eminent domain, and exemption from taxation take their appropriate places as legitimate parts of the entire plan." It follows, there-

---

[1] A decision whether, apart from § 2A, the leased Boston Common property would be taxable under St. 1922, c. 390, and G. L. (Ter. Ed.) c. 59, § 3A, will be necessary only if § 2A is repealed.

fore, in the present case, under the doctrine of the *Allydonn* case that all reasonable incidents to the Boston Common garage scheme and of achieving its public purpose, including the tax exemption provision of § 2A, must also be regarded as for a valid public purpose and "as legitimate parts of the entire plan." This court cannot say that the Legislature exceeded its powers in deciding that tax exemption was an appropriate incident of the legislative scheme.

There is nothing in *Dehydrating Process Co. of Gloucester, Inc.* v. *Gloucester,* 334 Mass. 287, in *Opinion of the Justices,* 332 Mass. 769, or in *Opinion of the Justices,* 324 Mass. 724, inconsistent with the conclusion reached in the present case. In the *Gloucester* case, a pier owned by the Commonwealth was leased to a nonprofit organization and subleased by it to various lessees for the packing of fish. Although the maintenance of the pier as a facility was a proper public purpose to assist the important fishing industry, the use of the pier by the sublessees in their own businesses was held (at page 815) not to be for a public purpose. In the present case, even though Garage, Inc., is occupying the garage for its own profit in the conduct of its own business, the use of the garage by it is the very method selected by the Legislature for carrying out the primary purpose of the legislative scheme. In *Opinion of the Justices,* 332 Mass. 769, the proposed tax exemption of land in the Back Bay of Boston in the present Boston and Albany Railroad yards would have applied to land owned by private individuals and (unlike the city owned land in the present case) would not have been used to accomplish any public purpose. The opinion advised that the exemption would be improper. The proposed legislation, which this court, in *Opinion of the Justices,* 324 Mass. 724, advised would be invalid, would have exempted from taxation privately owned houses to be occupied by individual veterans and others and used by them not for any public purpose but for ordinary residential purposes.

The petitioners contend that the operation of the garage

by Garage, Inc., cannot be regarded as a public use because of the failure of either the Legislature or the city to provide for the regulation and control of Garage, Inc., as, for example, in the matters of the rates to be charged and the quality of service to be rendered. They assert that some measure, at least, of public regulation and control is necessary to permit tax exemption of the garage in the hands of the lessee as property devoted to a public use. This argument is based upon language found in *Worcester* v. *Western Railroad*, 4 Met. 564, and certain cases following it. See cases collected in *Assessors of Boston* v. *Boston, Revere Beach & Lynn Railroad*, 319 Mass. 378, 381. See *Opinion of the Justices*, 334 Mass. 760, 762–763; *Opinion of the Justices*, 324 Mass. 724, 731; *Opinion of the Justices*, 334 Mass. 721, 730, 739–740.

The *Western Railroad* case decided that the right of way of a railroad and necessary railroad structures on the right of way were not subject to taxation. Chief Justice Shaw reviewed carefully (at pages 565–566) the act incorporating the railroad and the duties imposed by law upon it. He concluded (at page 566) that from "the various provisions of the law, by which the rights and duties of the Western Rail Road Corporation are regulated, it is manifest that the establishment of that great thoroughfare is regarded as a public work, established by public authority, intended for the public use and benefit, the use of which is secured to the whole community, and constitutes therefore, like a . . . highway, a public easement." He pointed out that the "only principle, on which the legislature could have authorized the taking of private property for its construction . . . is, that it was for the public use" and held (page 568) that the property was tax exempt to "the extent to which they [the railroad] are authorized to take land without the consent of the owner." It is true that, in many of the cases following the *Western Railroad* case, railroad or utility corporations, subject to potential or actual State regulation, were the owners of the property there under discussion. See, for example, *Boston* v. *Boston & Albany Railroad*, 170

Mass. 95, 98–100; *Milford Water Co.* v. *Hopkinton*, 192 Mass. 491, 494–497 (water company required to serve the public generally); *Connecticut Valley Street Railway* v. *Northampton*, 213 Mass. 54, 56–58 (street railway treated as taxable on property as to which it did not have power of eminent domain); *Assessors of Boston* v. *Boston, Revere Beach & Lynn Railroad*, 319 Mass. 378, 381 (ferry terminal); *Opinion of the Justices*, 334 Mass. 760, 762–764 (urban redevelopment corporations having power of eminent domain and "subject in many respects to the control of public authorities" where the proposed express exemption was "to continue only so long . . . as the project continues to be operated under public regulation and for the public benefit"); *Opinion of the Justices*, 334 Mass. 721, 730, 734, 739–740 (Question 17) (Massachusetts Port Authority, an instrumentality which "bears considerable analogy to a municipal corporation").

The *Western Railroad* case, and the cases following it, do not greatly rely, as supporting tax exemption of property used for public purposes, on the fact that the corporations are subject to actual or potential public regulation. At most, these cases treat public regulation of the owner or occupant of real estate as one factor to be considered in determining whether the use of the real estate is in fact public. The major consideration "is the character of the use to which the property is put, and not of the party who uses it." *Milford Water Co.* v. *Hopkinton*, 192 Mass. 491, 496. Compare *Commonwealth* v. *Lowell Gas Light Co.* 12 Allen, 75, 77 (where the court construed the operations of a gas company, not required to serve the public generally, or indeed to carry on business at all, as not being for a public purpose).

We think that, under the applicable decisions, the fact that Garage, Inc., has not been subjected to public regulation of its rates or service has no tendency to indicate that the garage scheme was otherwise than for a public purpose. Consequently, this fact is not fatal to the tax exemption. Whether to include such regulation in the scheme was a

matter for legislative determination. The Legislature may well have believed[1] that the competition of other garages, of private parking lots, and of municipally owned off-street parking facilities, would ensure reasonable prices to the public for use of the proposed garage, thus avoiding an expensive and unnecessary rate regulatory process. On this record, the garage remains potentially subject to public regulation. Nothing indicates that the Legislature has in any manner purported to bar itself from future supervision of the charges or service of the lessee of the proposed garage in carrying out the public purpose of the garage. If that becomes appropriate, doubtless provision for such regulation will be sought.

What has been said under the Constitution of the Commonwealth about the validity of the tax exemption granted by § 2A in large part also disposes of the contention that the petitioners have been denied the equal protection of the laws in violation of the Fourteenth Amendment to the Constitution of the United States. The tax exemption here granted by the Legislature is with respect to property owned by the city of Boston and used for a public purpose as expressly authorized by the Legislature. All of this was within the legislative discretion in dealing with property owned by, or held for the benefit of, the sovereign. *Boston Fish Market Corp.* v. *Boston,* 224 Mass. 31, 34-35.

By St. 1946, c. 294, § 2 (3), only a minimum rent rate was fixed. The city was entirely free to fix a rent higher than the minimum. Although the lessee, in negotiating the lease, would naturally give consideration to the possibility of re-

---

[1] Similarly in granting tax exemption, the Legislature may reasonably have believed that without the tax exemption no corporation would undertake to construct the new garage facility on the Common at its own expense and attempt to amortize its cost within the forty years given to it before the property passed finally to the city under St. 1946, c. 294, § 2 (7). The provision for tax exemption of the leased real estate may also have been enacted with some consideration of the fact that the lessee of the garage would be subject to an excise under G. L. (Ter. Ed.) c. 63, § 32, as amended, in the measure of which the value of its leasehold interest in real estate not subject to local taxation would presumably be appropriately reflected. Compare the exemption considered in *Commissioner of Corporations & Taxation* v. *Assessors of Boston,* 321 Mass. 90, 93, et seq. See *Opinion of the Justices,* 324 Mass. 724, 731-732.

peal of the tax exemption, the Legislature, in granting the exemption, would have been justified in believing that the city would normally obtain more favorable terms than if there had been no tax exemption, and that it would seek to obtain a rent high enough to compensate it for any loss of tax revenue by reason of the exemption. This would mean that the city, in another way, by proper negotiation, would receive the full equivalent of the tax, exemption from which had been granted.

Even if it be assumed that apart from § 2A the lessee of the garage would have been taxed with respect to the leased property, we perceive no denial of equal protection of the laws to any of the petitioners. The individual taxpayers have no cause to complain that this property, leased as a method of carrying out a public purpose, is not taxed while they are taxed. Separate classification for taxation or exemption of property used for a public purpose is within the legislative discretion and does not constitute an unconstitutional discrimination. "Neither due process nor equal protection imposes upon a state any rigid rule of equality of taxation. . . . [I]nequalities which result from a singling out of one particular class for taxation or exemption, infringe no constitutional limitation. . . . A legislature is not bound to tax every member of a class or none. It may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it." *Carmichael* v. *Southern Coal & Coke Co.* 301 U. S. 495, 509. See *Asbury Hospital* v. *Cass County*, 326 U. S. 207, 214–215; *Walters* v. *St. Louis*, 347 U. S. 231, 236–238. Compare *Wheeling Steel Corp.* v. *Glander*, 337 U. S. 562, 571–572. In addition to this consideration, the corporate petitioners, if, indeed, they have any standing, apart from the ten individual petitioners, to raise the question in this proceeding, cannot complain that the city, pursuant to legislative authority, leases property owned by it for a public purpose, on terms set with knowledge of, and presumably taking account of,

the tax exemption. See *Boston Fish Market Corp.* v. *Boston*, 224 Mass. 31, 34–35.

There is no showing on this record that there has been any improper classification of this garage for separate treatment in the matter of taxation. There is no suggestion that the Commonwealth permits taxation of any comparable garage property owned by the city and leased for a public purpose. The fact that the tax exemption applies only to a single property does not indicate denial of equal protection of the laws, where as here a proper classification has been made. *Independent Warehouses, Inc.* v. *Scheele*, 331 U. S. 70, 86. See *Massachusetts General Hospital* v. *Belmont*, 233 Mass. 190, 204. Compare *Wheeling Steel Corp.* v. *Glander*, 337 U. S. 562, 571–572. For the reasons outlined, it cannot be said that exemption of this one property and one corporation has no "fair and substantial relation to the object of the legislation." See *Massachusetts General Hospital* v. *Belmont*, 238 Mass. 396, 400.

The discrimination, held to be improper in *Dehydrating Process Co. of Gloucester, Inc.* v. *Gloucester*, 334 Mass. 287, 293, is wholly distinguishable. There only two sublessees of portions of a State pier, among several sublessees similarly situated, were assessed. This discrimination rested on no valid classification, as contrasted with the reasonable separate classification of the Common garage here sustained.

This petition was seasonably brought to obtain a decision on a doubtful matter of substantial civic importance. It is not an appropriate case for the award of costs of appeal. *Leonard* v. *School Committee of Springfield*, 241 Mass. 325, 332, and cases cited. *Howard* v. *Chicopee*, 299 Mass. 115, 123. See G. L. (Ter. Ed.) c. 261, § 13; *Carchidi* v. *Kalayjian*, 264 Mass. 230, 232.

Although there was no error in sustaining the demurrers, it will perhaps avoid future controversy if, as a matter of exercising the court's discretion under G. L. (Ter. Ed.) c. 231A, § 6, inserted by St. 1945, c. 582, § 1, a binding determination of the rights of the parties is made. Accordingly, the Superior Court, in lieu of the interlocutory

decrees sustaining the demurrers and of the final decree dismissing the petition, will enter a decree declaring and determining (1) that the petitioners, and each of them, are not entitled to any affirmative or injunctive relief in equity, and (2) that, as made applicable to Garage, Inc., and its property, and, as affecting the property taxation of the petitioners, and each of them, and of their property, by the city of Boston, St. 1946, c. 294, § 2A, inserted by St. 1948, c. 654, § 1, (a) is in all respects a valid exercise of legislative power within the authority granted to the Legislature by Part II, c. 1, § 1, art. 4, of the Constitution of the Commonwealth and (b) does not deprive the petitioners, or any one or more of them, of the equal protection of the laws in violation of the Fourteenth Amendment to the Constitution of the United States.

*So ordered.*