THE ATLANTIC REFINING COMPANY, COMMONWEALTH, intervener, *vs.* ASSESSORS OF NEWTON.

Suffolk. January 6, 1961. — March 8, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & KIRK, JJ.

*Taxation,* Real estate tax: public property used for nonpublic purpose. *Way,* Public: service facilities.

A parcel of land owned by the Commonwealth adjacent to the location of a limited access State highway and leased by the Commonwealth under G. L. c. 81, § 7C, as amended through St. 1950, c. 829, for use in private business for profit as a site for a gasoline station and a restaurant under a lease requiring the lessee to provide those and many related services for the benefit of the public travelling on the highway was, with the structures erected thereon, subject to the local real estate tax under G. L. c. 59, § 3A.

Appeal from a decision by the Appellate Tax Board.

*Walter Powers,* (*Walter White & Daniel Needham* with him,) for the taxpayer.

*Leo Sontag,* Assistant Attorney General, for the Commonwealth.

*George J. Elbaum,* Assistant City Solicitor, for the assessors of Newton.

*Kenneth E. Wilson, Carl V. Joslin, Jr., Edmund W. Nutter, Morton C. Jaquith, Harold E. Stevens, Bernard J. Lojko, John J. O'Shaughnessy, Jr., Roger P. Stokey, & William F. Looney, Jr.,* by leave of court, submitted a brief as amici curiae.

Whittemore, J. This appeal by The Atlantic Refining Company (Atlantic) challenges the decision of the Appellate Tax Board that the board of assessors of the city of Newton had validly assessed to Atlantic the 1955 real estate tax on a gasoline station, restaurant building, and the associated site, on a limited access highway, Route 128, held by Atlantic as lessee from the Commonwealth, and occupied by Atlantic's sublessees, Howard D. Johnson Company and John C. Waller. The Commonwealth was allowed to intervene as party petitioner and has filed a brief in support of the appellant's position. Seven municipalities, as amici curiae, have filed a brief supplementing the assessors' brief.

The decision sets forth the admitted fact that the lessee and sublessees are operating private businesses for profit and, on the authority of *Dehydrating Process Co. of Gloucester, Inc.* v. *Gloucester,* 334 Mass. 287, rules that the assessment was authorized by G. L. c. 59, § 3A. That section provides, relevantly, "Real estate owned by . . . the commonwealth . . . if used or occupied for other than public purposes, shall be taxed to the lessee or lessees thereof, . . . in the same manner and to the same extent as if the said lessee or lessees . . . were the owners thereof in fee . . . ." Section 5, Second, of the same chapter, exempts from taxation "Property of the commonwealth, except . . . real estate taxable under section three A."

The lease to Atlantic was made under the authority of

G. L. c. 81, § 7C, as amended through St. 1950, c. 829, which provided that, "In connection with the laying out or alteration of a limited access highway, the department [of public works] may take . . . land or rights in land adjoining the highway location whose right of access has been acquired and may provide for abutting service facilities for gasoline stations, automobile service stations, restaurants, and comfort stations, the management and operation of which shall be entirely under the supervision, jurisdiction and control of the department, and the income from which shall go into the Highway Fund."[1] Pursuant to this authority the department established sites of gasoline stations and public restaurants along Route 128, and leased the sites to Atlantic with many provisions to assure that the facilities would serve the public.[2] The lease is terminable by the department if Atlantic should refuse "to make available the reasonable requirements of service for the motoring public." The site in Newton was added to the lease by an amendment made "in the interest of affording better service to the travelling public."

Thus it appears that the real estate comprising the facility is held by the Commonwealth for a public purpose, and is used by private businesses for their business purposes in a way that serves the public purpose. The issue is whether the business use is significant in construing G. L. c. 59,

---

[1] Statute 1957, c. 700, § 1, deleted this provision, but § 2 continued in the department the granted powers with respect to facilities ''in existence or in the course of construction, or the subject of a contract . . . ''

[2] In the lease Atlantic agrees to construct and equip the facilities, pay a rent determined by sales, offer for sale stated products, ''render the best possible service to patrons with due consideration to safety, speed and convenience of service,'' and offer lubrication service, minor motor repairs and emergency road service. Required free service includes touring information, water for radiators and batteries, cleaning of windshields, inflation of tires, and toilet facilities. Pay toilets and telephone services are also specified. The retail prices of petroleum products are not to exceed prices prevailing in the vicinity. Employees are to be familiar with Massachusetts highways and have full knowledge of connecting roads, hotels, doctors, hospitals, telephone and telegraph facilities, and to have other general information; they are to be well trained in giving first aid treatment and provided with adequate first aid supplies. Subletting is provided for and Atlantic agrees to lease all restaurant facilities to the Howard D. Johnson Company and to cause the latter to provide first class restaurant service and to offer specified auxiliary items. The privileges and concessions of the lease are exclusive.

§ 3A.   The question was noted in *Cabot* v. *Assessors of Boston,* 335 Mass. 53, 63–64, but not answered in that case because of the express exemption from taxation granted to the leased portion of the Boston Common and the garage property by St. 1948, c. 654, § 1.   The question as to yet another lease was answered in the *Dehydrating* case, *supra,* 334 Mass. 287, 292, where we held that the business use of the sublessees of the fish pier was use for "other than public purposes."

Before examining the distinctions on which Atlantic relies to make the *Dehydrating* case inapplicable, we review other related cases and principles and examine the statute.

Unquestionably from the viewpoint of the validity of the taking of the site for the service facility, the public service purpose is primary and the business advantage to the occupants is secondary and incidental.   *Allydonn Realty Corp.* v. *Holyoke Housing Authy.* 304 Mass. 288, 292.   *Opinion of the Justices,* 330 Mass. 713, 723–724.   *Opinion of the Justices,* 313 Mass. 779, 783.   *Opinion of the Justices,* 320 Mass. 773, 775.

The public purpose is of controlling significance also where the question is the validity of an express exemption of the site from taxation.   *Cabot* v. *Assessors of Boston,* 335 Mass. 53, 64–65.   Furthermore, if there is no express provision for the taxing of land taken and used for a public purpose, such land is exempt, and the principle was applied to land acquired by a public service corporation under or in the shadow of the power of eminent domain and used by it in its profit intended business.   *Assessors of Boston* v. *Boston, Revere Beach & Lynn R.R.* 319 Mass. 378, and cases cited.   "[T]his right of exemption from taxation is coextensive with the right to take by eminent domain. . . . [It is founded] upon judicial construction . . . as dictated by considerations of justice and expediency."   *Connecticut Valley St. Ry.* v. *Northampton,* 213 Mass. 54, 58.   But see, now, G. L. c. 59, § 3B, inserted by St. 1946, c. 393, "An Act to abolish certain implied exemptions from local taxation."

These principles and cases do not, however, determine the construction of a statute which expressly subjects land

to taxation notwithstanding that it is owned by the Commonwealth. General Laws c. 59, § 3A, does not in terms exclude the purpose for which the occupant uses the property from among those which are relevant in determining whether it is "used or occupied for other than public purposes"; the plain meaning of the words includes such purpose, and the intent to impose a tax notwithstanding ownership by the Commonwealth, which necessarily imports an underlying public purpose, points to the purpose of the occupant as the important, if not the dominant, purpose to which the statute refers. Real estate taxes on business properties are in a significant aspect levies on the businesses conducted at the sites. It is inferable that a reason for such statutes as G. L. c. 59, § 3A, is to overcome the inequities which result if some businesses conducted for profit are exempt from real estate tax burdens because located on publicly owned land. This construction of the statute necessarily underlay the decision in the *Dehydrating* case, where it was recognized without discussion, and we think it is equally applicable to the case at bar.

In the *Dehydrating* case title to a fish pier in Gloucester was held by the Commonwealth for the public purpose "of improving and developing Gloucester harbor for the promotion of the fish industry and the commercial facilities of the city . . . ." The pier was leased to a tax exempt charitable corporation to administer the pier without profit. The lessee made the pier and its facilities available to the fishing industry and sublet portions of the pier to various persons engaged in the fishing industry or business incidental thereto "in such a manner as would most equitably promote the fish industry and the commercial facilities of the city." Two sublessees, which were engaged in manufacturing fish by-products, challenged real estate taxes assessed to them. 334 Mass. 287, 288, 289, 292. In that case, as here, the use of the Commonwealth's property by occupants for their private business purposes served a public purpose. In *Gloucester Ice & Cold Storage Co.* v. *Assessors of Gloucester,* 337 Mass. 23, 26, 27, a decision supple-

menting the *Dehydrating* case, we said, "It is for the Legislature to decide to what extent it will assist the execution of a public purpose.   Here the Legislature has made no express provision for tax exemption of the pier in the hands of tenants operating for private profit, comparable to the specific tax exemption considered in . . . [*Cabot* v. *Assessors of Boston,* 335 Mass. 53, 63–65] but has contented itself with assisting the fishing industry by the construction of basic facilities, leaving them taxable under § 3A to private business occupants, even though such occupants directly and indirectly contribute to the accomplishment of the public purposes."

It is true, of course, that the public purpose served by the presence of sublessees on the fish pier is not directly related to the way the sublessees conduct their businesses. By contrast, the Commonwealth is directly concerned that the occupants of the facility on Route 128 give to travellers the services specified in the lease.   But, as stated, it is not in this aspect of the occupants' business that the test of taxability lies.   The significance of the business purpose of the occupants' use is not extinguished or made incidental by an increase in the concern of the Commonwealth with the particular way the private business is conducted.

The Legislature could have provided that land of the Commonwealth occupied by lessees should be taxed only if the Commonwealth for the time being had no interest in the use being made of the land, as would, for example, be the case if land intended for a public building were leased temporarily for unrelated commercial use.   See *Boston Fish Mkt. Corp.* v. *Boston,* 224 Mass. 31 (flats leased for commercial use).   But we think that G. L. c. 59, § 3A, is not subject to such a narrow construction.

The Commonwealth relies on *Carney* v. *Ohio Turnpike Commn.* 167 Ohio St. 273, 276, and *Pittsburgh Pub. Parking Authy.* v. *Board of Property Assessment,* 377 Pa. 274. The statutes applied in these cases exempted from taxation publicly owned property used for public purposes (in Ohio, "used exclusively for a public purpose"), and the use of

the property for the public use of furnishing facilities concomitant to the highway operation was deemed controlling to require exemption. These cases apply the principle underlying the Massachusetts cases, already noted, exempting land used for a public purpose in the absence of an express statute. See, for example, *Milford Water Co.* v. *Hopkinton,* 192 Mass. 491, 495–497, where it was said that "[i]t is the character of the use to which the property is put, and not of the party who uses it, that settles the question of exemption from taxation." In the *Cabot* case, 335 Mass. 53, 62–63, we applied reasoning of the *Pittsburgh* case to support the view that the lease to the garage corporation did not bar a tax exemption. But inasmuch as the right to a tax exemption must depend on the underlying public purpose served, these cases, except perhaps the Ohio case, are not necessarily inconsistent with the construction which we adopt of G. L. c. 59, § 3A. For the view that the use in Ohio was not "exclusively for a public purpose," see concurring and dissenting opinions, 167 Ohio St. 277, 279.

The private profit purpose of the occupants of the facilities on Route 128 is not diminished by the provisions of the lease which may, as the dissenting member of the Appellate Tax Board found, require more free services than are customarily furnished by the occupants at their sites not on Commonwealth land. For the exclusive opportunity of selling petroleum products and meals and related items, the occupants agree to pay rent in money, and to furnish the prescribed services. These provisions of the lease emphasize the public purpose of the Commonwealth in providing the facilities, but this, as stated, does not determine the present issue.

We do not think it significant that the result of our construction of the statutes may be, as the Commonwealth contends, that "the Commonwealth will actually be paying taxes on its real estate used for providing abutting service facilities." General Laws, c. 59, § 3A, shows an intent that municipalities have for their purposes real estate tax

revenue from land devoted by occupants to the uses of their businesses, even though owned by the Commonwealth. Section 3A does not make the right to tax dependent upon the terms of the lease between the Commonwealth and the lessee. It is not unreasonable that the ultimate effect of § 3A may be an allocation of revenues between the Commonwealth and the municipality. New aspects of public purpose and new public activities call for new adjustments between the Commonwealth, the municipalities, and businesses conducted on publicly owned land. See *Boston Fish Mkt. Corp.* v. *Boston,* 224 Mass. 31, 34–35.

*Decision affirmed.*