MARY M. McLEAN vs. CITY OF BOSTON & another.

Suffolk.   December 6, 1950. — February 28, 1951.

Present: QUA, C.J., RONAN, WILKINS, WILLIAMS, & COUNIHAN, JJ.

*Constitutional Law*, Public purpose, Housing.   *Eminent Domain*, Purpose of taking, Validity of taking.   *Housing.*

St. 1949, c. 191, as amended by St. 1949, c. 734, authorizing the acquisition of parcels of land by eminent domain for the purpose of removal thereto of buildings containing a substantial number of dwelling units taken by eminent domain in order to facilitate the construction of a rapid transit extension, and further authorizing the sale of such parcels with such buildings thereon at private sale or public auction upon completion of the removal, provides for the exercise of the power of eminent domain and the expenditure of public money for a public purpose and is constitutional in view of an acute housing shortage existing in the area involved and elsewhere, the necessity of demolishing such buildings unless relocated, the aggravation of the housing shortage consequent on their demolition, and the stated purpose of the statute to avoid their demolition.

BILL IN EQUITY, filed in the Superior Court on May 26, 1950, against City of Boston and Metropolitan Transit Authority.

The suit was heard by *Kirk*, J.

In this court the case was submitted on briefs.

*W. M. Bagley & P. A. Goldstein*, for the plaintiff.

*W. L. Baxter*, Corporation Counsel, *S. C. Davenport*, Assistant Corporation Counsel, & *W. H. Kerr*, for city of Boston; and *W. B. Downey & E. F. Cooley*, for Metropolitan Transit Authority.

COUNIHAN, J.   This is a bill in equity under G. L. (Ter. Ed.) c. 231A, inserted by St. 1945, c. 582, § 1, seeking a determination of the constitutionality of St. 1949, c. 191, as amended by St. 1949, c. 734, and as affected by St. 1947, c. 544, § 8A (h), inserted by St. 1949, c. 572, § 3, which purports to authorize the metropolitan transit authority, here-

inafter called the authority, acting as agent for the city of
Boston to acquire in fee by eminent domain or otherwise
certain parcels of land in East Boston. The suit was tried
upon a stipulation agreed to by all the parties "that the
rights of the parties thereto shall be determined from the
pleadings therein, to wit, the Substitute Petition for Declar-
atory Judgment, Respondents' Answer to Substitute Peti-
tion, Petitioner's Replication to Respondents' Answer to
Substitute Petition, and Acknowledgment of Notice by
Attorney General; that the facts set forth in said pleadings
are all the material, ultimate facts from which the rights of
the parties are to be determined; and that this Court, and
any court before which this cause shall come upon appeal,
exceptions, report or other proceedings in the nature of an
appeal, shall be at liberty to draw from said facts any in-
ferences that might have been drawn therefrom at a trial,
as if said pleadings constituted a case stated."

The judge ruled the statute to be constitutional and the
takings hereinafter referred to valid. After entering an
order for a decree to this effect he reported the suit to this
court.

By St. 1945, c. 692, as amended by St. 1946, c. 494, the
transit department of Boston was authorized and directed
to extend the East Boston tunnel rapid transit route upon
certain conditions all of which have been complied with.
Many buildings with dwelling units therein lay within the
path of the extension and were taken by eminent domain for
that purpose. An acute shortage of housing accommoda-
tions existed throughout Boston (including East Boston)
and in neighboring communities. Demolition of buildings
with housing units would increase this housing shortage and
cause most, if not all, of the occupants of such units undue
hardship by rendering them homeless. Presumably because
of this St. 1949, c. 191, as amended, was duly enacted. The
transit department was abolished by St. 1947, c. 544, § 8A (d),
inserted by St. 1949, c. 572, § 3, and the authority as di-
rected by clause (h) proceeded to complete the extension of
rapid transit facilities as already provided for and to com-

plete as agent for the city of Boston the relocation of buildings with dwelling units as authorized by St. 1949, c. 191, as amended. Twenty-one buildings, all of which were movable, with dwelling units housing two hundred seven persons, comprising fifty-six families, lay within the path of the extension and were taken under St. 1945, c. 692, as amended. No private party has at any time offered to relocate these buildings as a private enterprise. Unless relocated these dwelling units would have to be demolished and the housing shortage already acute would be made worse. Under the power purported to have been conferred by St. 1949, c. 191, as amended, the city of Boston acting through the authority as its agent perfected a program by which it acquired other sites to which these buildings with dwelling units were moved. It does not appear that these parcels of land with the buildings thereon have yet been disposed of but there is no doubt that this will be done or has been done as provided in St. 1949, c. 191, § 1.

The issue here presented is whether or not the taking of two parcels of land owned by the plaintiff by eminent domain was for a public or private purpose. If for a private purpose as the plaintiff argues, then St. 1949, c. 191, as amended, is unconstitutional; if for a public purpose as the defendants argue, then it is not.

Section 1 of St. 1949, c. 191, so far as here material provides: "For the purpose of avoiding, so far as practicable, during the period of public exigency, emergency and distress now existing on account of the acute shortage of housing in Boston and many other cities and towns of the commonwealth, the demolition of dwelling units on land heretofore or hereafter acquired in the East Boston district of the city of Boston for the purposes of" St. 1945, c. 692, as amended, the city of Boston may acquire by eminent domain or otherwise parcels of land to which buildings with dwelling units may be moved. It further provides that upon the completion of the removal of these buildings they and the lots of land upon which they have been relocated may be sold and disposed of in the manner provided

by the statute, to former owners of the buildings or former occupants at private sale, or at public auction.

It is indisputable that ordinarily property cannot be taken by eminent domain and paid for by public money raised by taxation for the purpose ·of reconveying it or disposing of it to private individuals. *Opinion of the Justices,* 204 Mass. 607. *Opinion of the Justices,* 211 Mass. 624. *Salisbury Land & Improvement Co.* v. *Commonwealth,* 215 Mass. 371, 376. This principle, however, is not applicable when the property so taken is sold or disposed of in furtherance of a public purpose. *Allydonn Realty Corp.* v. *Holyoke Housing Authority,* 304 Mass. 288 (slum clearance coupled with low rent housing). *Opinion of the Justices,* 320 Mass. 773 (shortage of housing available for veterans).

Statute 1949, c. 191, as amended, expressly authorized the city of Boston to expend money raised by taxation to carry out the purposes of the statute and we have said that "Whether an expenditure of public money is for a public purpose is a subject of judicial inquiry. . . . But in the decision of this question weight is to be given to legislative findings of fact as to existing conditions material in such determination." *Opinion of the Justices,* 320 Mass. 773, 779. In § 1 of the statute under consideration it is unequivocally stated that the purpose of the statute was to avoid the demolition of buildings with housing units during a period of public exigency, emergency and distress occasioned by a housing shortage.

The facts here warrant a finding that there was a local emergency which had not been met in any way by ordinary private agency. Because of a public improvement declared necessary by the Legislature, two hundred seven persons comprising fifty-six families were to find themselves homeless through no fault of theirs. We are of opinion that this situation justified action by the Legislature to remedy it. The statute permitted the expenditure of money raised by taxation for a public purpose and in consequence it is not unconstitutional. See *Opinion of the Justices,* 182 Mass. 605, 610, 611.

We are fortified in our belief by relevant decisions of the Supreme Court of the United States which said in *United States* v. *Welch,* 327 U. S. 546, at page 554, "And when serious problems are created by its public projects, the Government is not barred from making a common sense adjustment in the interest of all the public." *Brown* v. *United States,* 263 U. S. 78. It may be important to note that a similar statute, c. 898 of the laws of New York of 1947, enacted for a purpose similar to that of St. 1949, c. 191, as amended, has been held constitutional in *Watkins* v. *Ughetta,* 273 App. Div. (N. Y.) 969, affirmed in 297 N. Y. 1002, 1003.

*Order for decree affirmed.*