Court Street Parking Co. *vs.* City of Boston & others (and two companion cases[1]).

Suffolk.    May 7, 1957. — June 26, 1957.

Present: Wilkins, C.J., Ronan, Williams, Whittemore, & Cutter, JJ.

*Municipal Corporations*, Parking place. *Boston. Eminent Domain*, Purpose of taking, Validity of taking. *Constitutional Law*, Public purpose, Taxation, Equal protection of laws. *Taxation*, Real estate tax: exemption. *Equity Pleading and Practice*, Decree, Appeal.

In a suit in equity brought to enjoin action under an allegedly invalid statute, a decree merely adjudging that the statute was valid and such action authorized was a final decree from which an appeal lay to this court even though as the case stood a declaratory decree was not permissible. [226–227]

St. 1946, c. 474, as amended by St. 1948, c. 612, authorizing the taking of land in behalf of the city of Boston and the leasing thereof to private operators for use as off-street parking spaces or for parking of vehicles in structures to be built thereon by the lessees, all subject to maximum rates and regulations respecting the use of the properties contained in the leases, was enacted for the public purpose of alleviating traffic congestion in the ways of Boston by a general scheme involving the use of public authority to marshal private capital and is not unconstitutional as authorizing exercise of the power of eminent domain for private ends, even though the lessees may profit from the operation of the properties and the statute authorizes the taking of properties already in use by their owners as off-street parking lots and properties on which their owners are planning to build structures for parking of vehicles. [229–231]

The provision of St. 1946, c. 474, as amended by St. 1948, c. 612, granting tax exemption to lessees from the city of Boston of properties operated by them for the parking of vehicles is constitutional as an appropriate incident of the legislative scheme of the statute to further the public purpose of alleviating traffic congestion in the ways of Boston. [230]

---

[1] The companion cases are by Julius E. Rosengard and another, and by Pilgrim Parking, Inc., against the same defendants.

St. 1946, c. 474, as amended by St. 1948, c. 612, dealing with the matter of parking facilities for vehicles in the city of Boston, does not make an unreasonable and arbitrary classification in authorizing the taking in behalf of the city of properties already in use as off-street parking lots, including those on which their owners are planning to build structures for parking of vehicles, while expressly forbidding the taking of existing garages. [231]

In a suit in equity to enjoin action under an allegedly invalid statute, wherein the plaintiff appealed from a final decree merely declaring that the statute was valid and such action authorized, this court, upon deciding that the statute was valid, merely reversed the decree and ordered the entry of a decree dismissing the bill without determining the propriety of a declaratory decree. [232]

THREE BILLS IN EQUITY, filed in the Superior Court on January 26, 1956, in two of the suits and on April 24, 1956, in the other.

The plaintiffs appealed from decrees entered after hearing by *Brogna*, J.

*Samuel P. Sears*, (*Lawrence R. Cohen & Julius E. Rosengard* with him,) for the plaintiffs.

*William D. Quigley*, Assistant Corporation Counsel, for the city of Boston and another.

*Hugh Morton*, Assistant Attorney General, for the Attorney General.

WHITTEMORE, J. These are three suits in equity brought by owners and operators of parking lots for automobiles in the city of Boston. The defendants in each case are the city of Boston, its mayor and its real property board. The bills of complaint seek to enjoin action under St. 1946, c. 474, as amended by St. 1948, c. 612, to take the parking lots of the plaintiffs for the purpose of constructing thereon public parking facilities. There is also in each bill a prayer that the court "determine that any taking by the city of Boston of the land owned and operated by the plaintiff for public parking purposes is contrary to law." The cases were heard together as cases stated, the contents of which were similar in form and substance. The final decree in each case adjudged "that chapter 474 of the Acts of 1946 is constitutional and that the city of Boston is authorized to take the plaintiff's property for the purposes therein set forth."

After the appeals from the final decrees were entered in this court the plaintiffs moved that the causes be remanded to the Superior Court for the entry there in each case of a "final decree," contending that the decrees entered do not finally dispose of the cases. These motions were denied and by order of this court notice was sent to the Attorney General of the pendency of the cases here, pursuant to which he filed a brief and an assistant attorney general argued before us.

1. The decrees entered were final decrees from which appeals could be taken to this court.

These cases as they were tried were not in such an aspect as to permit the entry of declaratory decrees under G. L. (Ter. Ed.) c. 231A, inserted by St. 1945, c. 582, § 1. We need not decide whether in an appropriate case the prayer for determination that "any taking . . . is contrary to law" would be sufficient without amendment to support a declaration under c. 231A.[1] Section 8 of c. 231A provides: "If a question of constitutionality is involved in any proceeding under this chapter, the attorney general shall also be notified of the proceeding and be entitled to be heard." Such notice and opportunity are conditions precedent to the entry of a declaratory decree. See *Lowell* v. *Boston,* 322 Mass. 709, 740–741; *City Manager of Medford* v. *Civil Service Commission,* 329 Mass. 323, 330; Anderson, Actions for Declaratory Judgments (2d ed.) § 361. But the lack of power to enter such a decree of course does not impair the general equitable jurisdiction of the Superior Court which was invoked by the bills of complaint to prevent irreparable injury by enjoining invalid action. Compare *Hull* v. *Belmont,* 309 Mass. 274.

The absence of power to enter these declaratory decrees did not make them other than final decrees from which appeals could be taken. The court below held by neces-

---

[1] Section 6 provides: "In an action at law or suit in equity heretofore or hereafter brought to obtain a judgment or other consequential relief, whether such judgment or relief is granted or not, the court may make a binding determination as provided in this chapter upon application of any party made in his declaration, bill, petition or answer."

sary implication that the bills of complaint presented cases for declaratory relief. If that construction had been correct the decrees would finally have disposed of the cases. It is settled that any question of the jurisdiction underlying a final decree or judgment will be determined by an appellate court whenever the case is brought before it by any possible means. *Donnelly* v. *Montague,* 305 Mass. 14, 19. *Crystal, petitioner,* 330 Mass. 583, 591.

2. The statute is constitutional; no unlawful action is forecast and the plaintiffs are not entitled to injunctive relief.

Statute 1946, c. 474, provides in part as follows: The city of Boston acting by the board of real estate commissioners "shall forthwith proceed with the establishment of such public off-street parking facilities in the city as the board may deem necessary to insure in the public interest the free circulation of traffic in and through the city." The board is given the power to acquire by purchase, gift, devise, eminent domain, or otherwise, but not by lease, real and personal property and interests therein other than leasehold "in such locations . . . as the board, with the approval of the planning board and the traffic commission of the city, shall have determined require public off-street parking facilities; provided, that the board shall have no power to acquire, except by gift or devise, any property privately held and operated as a garage, which term shall not be construed to include a parking space."

Statute 1948, c. 612, supplemented the earlier act in part as follows: It declared that congestion from parking of motor vehicles is a public nuisance, which the establishment of off-street parking facilities would not adequately abate, that for this purpose the building of structures to increase the number of vehicles to be accommodated was necessary, and "that it is not in the public interest to expend public funds in the building of structures on public off-street parking facilities when private capital is available therefor"; and accordingly, as a "public necessity," it added to the powers given to the board by St. 1946, c. 474, the power to

lease to any person any property acquired for the purposes
of the act "to be used by the lessee for the parking of motor
vehicles but for no other purpose" for up to forty years,
"and upon such terms as the board shall determine," pro-
vided that "any lease for a period exceeding three years
shall be upon the express condition, and shall contain a
covenant on the part of the lessee, that within such period,
not exceeding three years, after its execution as the board
shall fix the lessee shall construct . . . without cost to the
city such structures and facilities for parking as the board
shall determine, which shall at least double the number of
motor vehicles the demised premises can accommodate."
The annual rent under leases for over three years is to be in
such amount "as the board shall determine to be reasonable
but in no event less than four per cent of the total cost to
the city . . . of the demised premises including any improve-
ment thereof made prior to the execution of the lease."
"No lease shall be made except to the highest responsible
bidder as determined by the board." "[E]very lease shall
contain schedules of maximum rates to be charged by the
lessee for the use by the public of the property thereby
demised, and also regulations with respect to the use, opera-
tion and occupancy of such property." "No person shall
be assessed any tax upon any real estate or buildings of
which he is the lessee under this act, any provision of general
or special law to the contrary notwithstanding."

The cases stated include these facts: The owner or opera-
tor of each lot "has under preparation plans to construct a
structure thereon so that the capacity for motor vehicles
will be" greatly increased. The board has held hearings
concerning the taking of the land and "intends at an early
date to take by eminent domain the fee . . . . The defend-
ants intend, after these takings, to lease the land so acquired
to a private person or persons upon condition that the lessee
construct upon the land" a facility greatly to increase the
accommodations — that is, in two instances from forty-five
and ninety automobiles, respectively, to seven hundred au-
tomobiles and in the third instance from ninety automo-

biles to "greatly increased" capacity. "The defendants intend to act strictly in accordance with the provisions of the statutes . . . ." The prospective lessee, subject to the statutes, will operate the facilities "for the lessee's personal profit." The defendants intend until the execution of a lease under which a building will be constructed to lease the lots to private operators "who will operate the same, without substantial change from . . . present condition[s], as a public parking lot for their own personal profit" subject to the statutes. If for any reason the defendants do not conclude a lease conditioned on construction, they intend "to continue to lease the said land to private persons . . . or to construct the structure [or facility] with municipal funds and to lease the same to private persons for operation" all under the statutes.

Legislative findings such as are embodied in these statutes are significant. *Allydonn Realty Corp.* v. *Holyoke Housing Authority,* 304 Mass. 288, 293–294. *McLean* v. *Boston,* 327 Mass. 118, 121. *Opinion of the Justices,* 320 Mass. 773, 779–780. We have already decided in effect that the purpose declared in St. 1946, c. 474, § 1, is a public purpose, that is, in the words of the statute, "the establishment of . . . off-street parking facilities . . . to insure in the public interest the free circulation of traffic in and through the city." *Tate* v. *Malden,* 334 Mass. 507, 508. The public interest is emphasized where the need for relief is so great that the existing condition can be termed a nuisance as has been done in St. 1948, c. 612. *Lowell* v. *Boston,* 322 Mass. 709, 737. *Cabot* v. *Assessors of Boston,* 335 Mass. 53, 64.[1]

We have already determined also that the fact that private operators may be expected to profit from the operation of the buildings does not, in such general schemes as this to meet such a need as is here shown, mean that the statutory plan is not for a public purpose. *Lowell* v. *Boston,* 322 Mass. 709, 735–738. *Cabot* v. *Assessors of Boston,* 335 Mass. 53, 59. See *Allydonn Realty Corp.* v. *Holyoke Housing Authority,*

---

[1] Appeal dismissed June 10, 1957, sub nomine *Cabot* v. *Alphen,* 354 U. S. 907.

304 Mass. 288, 294–295; *Opinion of the Justices,* 330 Mass. 713; *Papadinis* v. *Somerville,* 331 Mass. 627.

The tax exemption provision is valid. *Cabot* v. *Assessors of Boston,* 335 Mass. 53, 64–65.

It was permissible for the Legislature to determine that it is in the public interest to enlist private capital so far as feasible for the construction and operation of the facilities. *Lowell* v. *Boston,* 322 Mass. 709, 736. *Cabot* v. *Assessors of Boston,* 335 Mass. 53.

The important question now raised is whether the possibility that in some instances it may turn out that for an indefinite period the only apparent change so far as parking facilities are concerned will be from a private owner to a private operator who leases from the city, accomplished under the power of eminent domain, makes the statutes invalid because primarily, or too much, in private interest. But that is not all that will have been accomplished even if such case or cases arise. Public purposes will have been served. The land taken will stand permanently devoted to the public purpose of an adjunct to, and facilitating, the use of public ways and not subject in such use to the decision of an owner to change the use. *Tate* v. *Malden,* 334 Mass. 507. It will so stand as a part of a statutory plan to provide enough such areas to relieve a pressing public need. Its ownership will have changed as a part of a plan designed to use public authority to marshal private capital to meet the public need. The possibility upon which the plaintiffs rely is not the primary purpose of the statutes. The existence of the possibility does not make the intent of the statutes or their effect in operation the use of public authority to serve a private end. There is reasonable provision for control in the public interest if such a possibility develops as a fact. It is "every lease" that must contain "schedules of maximum rates . . . and also regulations with respect to the use, operation and occupancy . . . ."

The statutes are to be judged as enactments designed to increase the amount of space in the city of Boston available for the parking of automobiles by facilitating the construc-

tion of buildings for the purpose in areas of parking congestion. It cannot be known in advance when private capital for this purpose will surely be available. It is reasonable to provide for the continued use of the land for parking purposes pending construction, either by private operators or by the city. The possibility that some lot or lots will continue indefinitely without the construction of a building thereon could have been provided against either by requiring that the city itself build after a period of attempted leasing or, as the plaintiffs have suggested, by authorizing a taking only after a lease to construct had been secured. But it is not necessary so to limit and hamper the city in its acquisition and development of property for a public purpose.

We hold that such aspects of private advantage as the statutory plan presents are reasonably incidental to carrying out a public purpose in a way which is within the discretion of the Legislature to choose. See discussion of public and private objects in *Allydonn Realty Corp.* v. *Holyoke Housing Authority,* 304 Mass. 288, 292. Compare *Salisbury Land & Improvement Co.* v. *Commonwealth,* 215 Mass. 371, 377; *Opinion of the Justices,* 332 Mass. 769, 782.

We do not think, and the plaintiffs have not contended, that an arbitrary and unreasonable distinction is made by the statutes in excluding existing garages from the category of property which can be taken or purchased. Existing garages presumably already provide substantially more space for parking automobiles than would be afforded by the use of the underlying land without a structure thereon, and hence already serve the purpose of the statutes. The fact that owners of particular parking lots may have plans for building garages, which so far as appears may have developed or matured after the board began action for taking their lots, does not make the statutes arbitrary in their application. The validity of action under a general plan for serving a public need cannot depend on such uncertainties.

We have considered all the points argued by the plaintiffs. It is not important, we think, that the maximum rates will

be established in advance by the board; presumably, subject to the maximum limitation, rates will be so fixed by the operators as to cause the use of the facilities and produce income. Nor is it an argument against validity that certain receipts are to be paid into the Parking Facilities Fund and that other receipts are to be credited to general funds of the city.

The agreement in each "case stated" that "The defendants intend to act strictly in accordance with the provisions of the statutes" disposes of any suggestion that upon a determination of validity of the statutes or the denial of injunctions any other course might be pursued.

3. The bills asked injunctions against action under allegedly invalid statutes. That issue being found against the plaintiffs it is proper that the bills be dismissed. Upon an appeal under G. L. (Ter. Ed.) c. 214, § 19, "the cause shall thereupon be pending before the full court, which shall hear and determine the same, and affirm, reverse or modify the decree appealed from. . . ." We need not determine whether the necessity under G. L. (Ter. Ed.) c. 231A, § 8, of notice to the Attorney General and an opportunity for him to be heard before declaratory relief may be given, has been met in these cases by the notice given to him after the cases reached this court, so that under our broad powers we could now enter a declaratory decree. The same end of a determination of the validity of the statutes is now served, after this opinion, by the dismissal of the bills of complaint on the merits. See *Lowell* v. *Boston*, 322 Mass. 709, 740–741.

The decrees are reversed. A decree is to be entered in each case dismissing the bill of complaint.

*So ordered.*