GARB, J.,
— By virtue of a resolution of the Bucks County Airport Authority, certain property therein described of plaintiff herein[1] was condemned for drainage purposes. The purpose of the condemnation was to permit surface waters collected upon the property of defendant to be discharged upon and permitted to flow across the property of plaintiff. The property of defendant is the Central Bucks County Airport, which is a facility of defendant herein. The property of plaintiff is immediately adjacent to that of defendant. Plaintiff has filed preliminary objections to the condemnation pursuant to the provisions of the Eminent Domain Code, of June 22,1964, P. L. 84, sec. 406, as amended by the Act of December 5, 1969, P. L. 316, sec. 1, 26 PS §1-406. An answer to the prehminary objections was filed by defendant and depositions taken pursuant thereto. The matter was argued before the court en banc and now comes before us for disposition.
A portion at least of the airport premises is leased by defendant to Central Bucks Aero, Inc., a privately owned business corporation, by virtue of a lease agreement between defendant and Central Bucks Aero, Inc., whereby the said corporation agrees to operate the airport facilities on behalf of defendant. One of the hangars was constructed and some of the hard surface runways installed by a third privately owned business *344 corporation under contract to do so with Central Bucks Aero, Inc. Other hangars and runways were constructed by defendant. Initially, it is plaintiff’s contention that the condemnation is unlawful and should, therefore, be dismissed based upon the assertion that the taking was not for a public purpose but rather for the private purposes of Central Bucks Aero, Inc.
Plaintiff does not contest the right of eminent domain in defendant for the purpose for which it was exercised in this case. Rather, plaintiff relies on the narrow contention that by virtue of the lease agreement between defendant and Central Bucks Aero, Inc., in view of the private business interest involved of the leasing corporation, the taking was for a private rather than a public purpose.
A body vested with the powers of eminent domain may condemn only for a public purpose. While the power of eminent domain may not be employed for the mere purpose of diverting the land taken to the private use of another, even though there be involved in the transaction an incidental benefit to the public, the taking does not lose its public character merely because there may exist in the operation some feature of private gain, for if the public good is enhanced, it is immaterial that a private interest also may be benefitted: Washington Park, Inc. Appeal, 425 Pa. 349 (1967). Furthermore, where the right of eminent domain is vested in a municipality, an administrative body or even a private corporation, the question as to whether the circumstances justify the exercise of the power is not a judicial one, at least in the absence of fraud or palpable bad faith: Crawford v. Redevelopment Authority, 418 Pa. 549 (1965).
The court may not substitute its judgment for that of the condemning body in exercising its discretion as to the invocation of the power of eminent domain. *345 Nor may the court correct the condemning authority’s mistaken judgments. Furthermore, it is presumed that the condemning authority has performed its duties in good faith. The burden upon one attacking a condemnation is to prove the contrary, that the officials of the condemning authority acted in a capricious or fraudulent manner, or that its actions were based upon private motives inconsistent with the public welfare, and is a heavy one: Washington Park, Inc. Appeal, supra.
The right of eminent domain does not imply a right of the sovereign power to take the property of one citizen and transfer to another, even for full compensation, where the public interest will in no way be promoted by such transfer. Nor is incidental benefit to the public sufficient. Public use implies a possession, occupation and enjoyment of the land by the public at large. The most important consideration in the case of eminent domain is the necessity of accomplishing some public good which is otherwise improbable. Eminent domain can be invoked only when public exigency or necessity requires it, and the use of the property taken must be a public one, and the determination of what constitutes a public use presumptively makes the purpose so declared a public use: Philadelphia Rural Transit Co. v. Philadelphia, 309 Pa. 84 (1932).
The right to appropriate private property is conceded for public use, but not for private use. To constitute a public use, there must be a use or right of use by the public. However, it is always difficult to determine whether there is a public use and this determination must be made on a case by case basis: Pennsylvania Mutual life Ins. Co. v. Philadelphia, 242 Pa. 47 (1913).
Therefore, while admittedly, property cannot be *346 taken by eminent domain for the mere purpose of devoting it to the private use of another, if land is taken for a proper public purpose, it may be permitted to revest in private ownership where a public purpose is discharged. If the purpose is a proper one primarily for the discharge of a public use, then the fact that there is some private gain incidental thereto is immaterial: Belovsky v. Redevelopment Authority of Philadelphia, 357 Pa. 329 (1947).
While private property concededly cannot be taken by government for other than public use, the definition of what constitutes a public use is not circumscribed by mere legalistic formulae or philosophic standards. The definition has been left to the varying circumstances and situations which arise, with special reference to the social and economic background of the period in which the particular problem presents itself for condemnation. What constitutes public use varies with changing conceptions of the scope and function of government. As governmental activities increase with the growing complexity and integration of society, the concept of public use naturally expands in proportion: Dornan v. Philadelphia Housing Authority, 331 Pa. 209 (1938).
Central Bucks Airport is operated in its entirety for defendant by Central Bucks Aero, Inc., which corporation is a private business one. The corporation is the sole and exclusive operator of the airport pursuant to its agreement with defendant, but certain of the facilities are reserved for the use of the public. The corporation furnishes a general manager of the airport facility and some of its profits are paid to defendant. The corporation also pays for the use of various of the airport facilities. All payments are made in accordance with the agreement between the corporation and defendant. All payments are subject to negotia *347 tion between defendant and the corporation. The airport is operated for the use of the general public at rates negotiated between defendant and the corporation. The decision to lease the entire facility for operation to the corporation was made by defendant after study and consultation as being in the best interests of defendant, county officials and taxpayers, and following the recommendations of the Aircraft Owners and Pilots Association, the Federal Aviation Agency and the Pennsylvania Aviation Commission. This method of operation was determined by defendant to be preferable to operation by defendant by its own paid employes. Defendant oversees the operation of the facility by the corporation and receives monthly reports from the corporation at defendant’s regular meetings. Defendant audits the corporation’s books periodically.
The record before us is totally devoid of any evidence to show that defendant acted in a capricious or fraudulent manner or that its decisions or determinations in this regard were based upon any private motives inconsistent with the public welfare. On the contrary, its decision to proceed in this manner was as the result of extensive and serious deliberations and finally determined to be in the best public interest. The fact that defendant chose to discharge its public responsibility through the agency of a private[2] corporation does not negate the character of the use of the land as a public one. In Seligsohn v. Philadelphia Parking Authority, 412 Pa. 372 (1963), the court found the condemnation of certain land in the City of Philadelphia by the Philadelphia Parking Authority for the purpose of construction and operation of a public parking garage to be imbued with a public usage, even though *348 the operation of the garage itself was leased to two private corporations. It was held therein that there was sufficient and adequate public purpose shown on the record to affirm the court below in finding the exercise of eminent domain lawful. The mere fact of some private gain to the two leasing corporations in that case, as we assume in this case, did not render the exercise of the power of eminent domain unlawful.
To be sure, the Supreme Court in Price v. Philadelphia Parking Authority, 422 Pa. 317 (1966), reached a contrary result. There, however, based upon the record before it, the court found that the public use was merely incidental to the private use of the property condemned.[3] There, the Philadelphia Parking Authority purported to condemn the land in question for the construction of a public parking garage, thereafter leasing the parking facility, together with the air space above it, for the purpose of construction of a high rise apartment house. The record showed, however, that the parking requirements generated by the privately owned apartment house would use, by far, most of the available parking spaces to be made available in the parking garage. Therefore, by a matter of simple mathematics, the public usage was clearly incidental to that of the private entrepreneurs. The parking facility was merely an appendage to, and an ancillary use of, the apartment house with the public to be permitted to use it only to the extent of availability remaining thereafter. That situation is clearly distinguishable from the one before us where the entire airport facility is to be used exclusively by and maintained for the public, although the corporation may derive some profit in its operation.
*349 In Washington Park, Inc., Appeal, supra, while concededly the highway to be constructed would benefit primarily the one shopping center to which it ran, the court found that the exercise of the power of eminent domain was justifiable and lawful because the highway would be available to any and all members of the motoring public who desired to use it. The same distinction may be drawn between Price v. Philadelphia Parking Authority, supra, and Seligsohn v. Philadelphia Parking Authority, supra, wherein the predominant use of the parking facility in the latter case would be by the public at large with only incidental use by the customers of the two leasing corporations. Even in Price v. Philadelphia Parking Authority, supra, it was held that the court must balance or weigh the public as against the private benefit to be derived from the property condemned. On balance, and considering the record before us, we can only conclude that the public use is primary and predominant and any private gain to be derived therefrom merely secondary or incidental.
Other jurisdictions considering this question have reached a similar result. In Horne v. Pearl River Valley Water Supply District, 162 So. 2d 504 (Miss., 1964), it was held that although certain of the facilities of the property taken may be leased to private interests for gain, that does not detract from the public use nature of the condemnation if the rights of the public are protected by those leases. Where the land is taken for public purpose which is paramount and primary, such taking is not defeated by the fact that there is some incidental private gain. In Court Street Parking Co. v. City of Boston, 336 Mass. 224, 143 N. E. 2d 683 (1957), it was held that where land was condemned for public parking purposes and was to be leased to private operators who were to construct and operate *350 the parking facility, there was a sufficient public purpose or use to justify the condemnation. The fact that private operators may be expected to profit from the operation does not, held that court, mean that the statutory plan is not for a public purpose. See also City of Trenton v. Lenzner, 16 N. J. 465, 109 A. 2d 409 (1954).
Plaintiff contends that notwithstanding the validity of the condemnation itself, it is unlawful and should be dismissed because, in fact, there is a superior method of discharging the surface water which would not involve the necessity of causing it to flow across her land. In essence, plaintiff challenges the wisdom of defendant in its method of discharging surface water and, therefore, contests the manner in which the condemning authority exercises its discretion. Our scope of review on this question is the same as that regarding the challenge to the initial propriety of the exercise of eminent domain. See Washington Park, Inc. Appeal, supra, and Crawford v. Redevelopment Authority, supra. Courts will not review the actions of governmental bodies or administrative tribunals involving acts of discretion, in the absence of bad faith, fraud, capricious action or abuse of power. We may not inquire into the wisdom of such actions or into the details of the manner adopted to carry them into execution: Faranda Appeal, 420 Pa. 295 (1966); Blumenschein v. Pittsburgh Housing Authority, 379 Pa. 566 (1954); Robb v. Stone, 296 Pa. 482 (1929); Camp Hill Borough Condemnation, 43 D. & C. 2d 418 (1967; Condemnation of Right of Way in Green-castle Borough, 37 D. & C. 2d 575 (1965). Plaintiff’s burden of proving fraud or abuse of discretion is a heavy one: Pittsburgh School District Condemnation Case, 430 Pa. 566 (1968).
*351 Once again, the record before us amply demonstrates that plaintiff has totally failed to meet this burden of proof. The engineer engaged by defendant to study the water drainage problem testified that although the drainage water from the airport could be piped out to Stony Lane, as contended by plaintiff, that, however, did not constitute a feasible solution to the surface water problem. It was his testimony that the area between the beginning and the end of said proposed drainage pipe was higher than either end and, obviously, water will not run up hill unless pumped. Furthermore, the area between the beginning and ending point of the proposed pipe consists of rock bed and the cost of excavating same would be prohibitive. It was the opinion of the engineer that the method adopted by defendant was the most reasonable and feasible. Furthermore, the chairman of the airport authority, an architectural engineer, testified that in his own professional opinion the best way to solve the drainage problems of the airport was to follow the natural contour of the land, which meant draining it in the manner proposed by this condemnation. He further testified that certain of the roadway of Stony Lane, a blacktop road, would have to be dug up and certain trees removed in order to prepare a drainage ditch along it. Furthermore, there was the ever-present possibility of rock strata in the bed of the road causing additional excavation expenses. The decision to utilize this drainage system was arrived at after study and consultation by defendant with two independent engineers. Based upon this testimony, we are not able to find such an abuse of discretion as to substitute our judgment for that of the condemning authority with regard to the manner of disposing of the airport surface water.
*352 Plaintiff lastly contends that the condemnation should be held invalid and defendant declared a trespasser because of the alleged failure of defendant to make payment of or a written offer to pay to plaintiff the amount of just compensation as required by the Act of June 22, 1964, P. L. 84 sec. 407, as amended December 5, 1969, (Act No. 137), sec. 1, 26 PS §1-407. Although there appears to be some controversy on this record as to whether an offer of just compensation was in fact made, we do not have to determine herein whether such was the case.[4] We have found no authority for the proposition that a condemnation shall be held invalid upon the failure of the condemning authority to make a payment or offer of just compensation. Subsection (a) of the foregoing Act of Assembly provides that the condemnor shall be entitled to possession or right of entry upon payment of, or a written offer to pay the amount of just compensation as estimated by the condemnor. Although there is also some dispute as to whether defendant has in fact entered upon possession of the property condemned by virtue of its allegedly discharging surface waters upon the property of plaintiff, subsection (b) of the foregoing Act of Assembly would appear to afford plaintiff a remedy therefor. The foregoing subsection (b) provides that if within 60 days from the filing of the declaration of taking,[5] the condemnor has not paid just compensation as provided in subsection (a), the condemnee may tender possession or right of entry in writing and the condemnor shall thereupon make payment of just compensation as estimated by the condemnor. There is further proce *353 dure provided for the situation wherein the condemnor may, notwithstanding, still refuse to make just compensation. It is clear on this record that plaintiff at no time tendered possession or right of entry in writiing, or otherwise, and she certainly has not availed herself of the procedures set forth in this Act of Assembly. See In the Matter of Condemnation of Certain Lands, 40 D. & C. 2d 554 (1966). If in fact defendant has committed certain acts of trespass upon the property of plaintiff, plaintiff has sufficient and adequate remedies, but not in this eminent domain proceeding.
For the foregoing reasons, we enter the following
ORDER
And now, to wit, October 16, 1970, the preliminary objections of plaintiff are hereby dismissed, denied and overruled.

 By virtue of the Act of June 22, 1964, P. L. 84, sec. 502, as amended by the Act of December 5, 1969, Act No. 137, sec. 1, 26 PS §1-502, the condemnee shall be designated as plaintiff herein and the condemnor as defendant.

 And, we would presume, profit making.

 This was not an eminent domain case but rather one to determine whether the land condemned should be exempt from taxation and the Eminent Domain Code applied only by analogy.

 Plaintiff testified on depositions that a check was tendered to her in some manner but that she refused it.

 May 10, 1968.